CUNNINGHAM v. KEESHAN.

Opinion delivered November 10, 1913.

1. STATUTES—RULE OF CONSTRUCTION.—Where a statute is plain and unambiguous, there is no room left for construction, and neither the exigencies of a case, nor a resort to extrinsic facts, will be permitted to alter the meaning of the language used in the statute. (Page 103.)

2. LEVEE DISTRICTS—BOUNDRIES—STATUTORY CONSTRUCTION.—The act of March 24, 1913, Act No. 190, Acts of 1913, page 791, which au-

thorized the commissioners of an improvement district organized under act of May 31, 1897, to enlarge and strengthen the levee in said district, held to cover the entire district as defined in the amendatory act of 1907, Act No. 73, page 166, which amended the act of May 31, 1897, and enlarged the district. (Page 105.)

3. IMPROVEMENT DISTRICTS—PETITION OF MAJORITY IN VALUE OF LAND OWNERS.—The constitutional provision regulating assessments in improvement districts, applies only to territory exclusively urban, and does not apply to that which includes suburban contiguous territory. (Page 107.)

4. IMPROVEMENT DISTRICTS—CONSENT OF MAJORITY OF LAND OWNERS.— The act of March 24, 1913, is not rendered invalid on account of the omission to provide some agency for the ascertainment of the consent of a majority of the land owners within the district. (Page 107.)

5. IMPROVEMENT DISTRICTS—ASSESSMENTS.—The act of March 24, 1913, granting powers to the commissioners of the Helena Improvement District, provides that if the first assessment proved insufficient to complete the improvement, the board could levy another assessment. Held, if before any of the assessments were actually collected, it was ascertained that the amount of the original levy was insufficient to make the improvement, the commissioners had the power to change the assessment before it became effective. (Page 108.)

6. IMPROVEMENT DISTRICTS—POWER TO BORROW MONEY.—The act of March 24, 1913, authorized a levee district to borrow money and issue negotiable evidences of indebtedness thereon. Held, this authority implied the power to contract for the payment of interest not exceeding the legal rate. (Page 108.)

Appeal from Phillips Chancery Court; *Edward D. Robertson*, Chancellor; affirmed.

*Mehaffy, Reid & Mehaffy*, for appellants.

The commissioners exceeded their authority in expending money in enlarging and strengthening a part of the levee not referred to in the act. The literal meaning of the words used will be disregarded *only when it is obvious from the act itself* that the use of the words was clerical error, or that the Legislature intended it in a different sense from its common meaning. Here the words and their meaning are plain and definite. 35 Ark. 57; 24 *Id.* 487; 64 *Id.* 555; 158 S. W. 960; 1 Words &

Phrases, p. 21; 47 Mass. 529-533; 12 So. 490; 30 Pac. 613; 25 So. 483.

*P. R. Andrews* and *Rose, Hemingway, Cantrell & Loughborough,* for appellees.

1. The object of the act was to strengthen the levees. There was only one levee, and it was continuous. The *purpose* of the act is of prime importance in a correct interpretation. Lewis, Sutherland, Stat. Construction, § 471; 35 Ark. 56; 64 Ark. 565; 64 *Id.* 108. The literal words of a statute are often disregarded to carry out the intention of the Legislature. 34 Ark. 263; 58 *Id.* 113; 77 *Id.* 491; 94 *Id.* 423; 100 *Id.* 175; 34 *Id.* 80; 49 *Id.* 397.

2. The consent of a majority was not necessary. 99 Ark. 100-103; 104 *Id.* 425.

3. The interest question is settled by 78 Ark. 118.

McCULLOCH, C. J. The General Assembly of 1897, during the extraordinary session of that year, enacted a special statute creating an improvement district designated as the Helena Improvement District, embracing substantially all the territory of that city and certain other contiguous territory on the south, for the purpose of constructing a levee along the Mississippi river in front of the district. At that time there was an old levee running from near the river bank in a westerly direction along Walker Street, which was near the northern boundary of the city. The act of 1897, creating the district, mentions Walker Street in the city of Helena as the northern boundary of the district. This statute was amended by the act of 1907 enlarging the boundaries of the district so as to include the balance of the city of Helena lying north of Walker Street, and also outlying territory on the north outside of the city for a distance of about a mile and a quarter, and also additional territory lying south of the district as originally formed. In the district thus enlarged a levee was constructed along the river front from the north to the south end of the district, the levee connecting on the north with the foot-

hills of Crowley's Ridge, which approaches the river at that point, and with the line of levee on the south end of the district known as Cotton Belt Levee District No. 1. This levee, if built of sufficient height and strength, would completely protect the lands lying in the district.

After the overflows of the years 1912 and 1913 the General Assembly of 1913 enacted a statute, approved March 24, 1913, Acts of 1913, No. 190, page 791, which authorized the commissioners to enlarge and strengthen the levee, and to levy assessments to pay for the same, and issue bonds for that purpose. The first section of the act of 1913, the construction of which is involved in this controversy, reads as follows:

"The commissioners of Helena Improvement District, being the improvement district organized by Act 9 of the extraordinary session of the General Assembly of 1897, approved May 31, 1897, are authorized and directed to enlarge and strengthen the levee in said district, which begins approximately at the southeast corner of the Walker Street levee, thence in a southerly direction along and adjacent to the Mississippi River to the southern boundary line of said district, together with the necessary canals and drains to make said levee effective and properly drain the district protected by it. Said commissioners are authorized and directed to make said improvement without the formality of a petition signed by a majority in value of the land owners of said district, and without waiting to secure the consent of any number of land owners in said district; the said canals and drains to be constructed, and said levee to be enlarged and strengthened according to plans, of the material and in the manner that the commissioners deem best."

The commissioners of the district construed the act as authority to enlarge and strengthen the levee along the whole front of the district, and made plans, levied assessments, and are proceeding to issue bonds to that end.

Appellants are property owners in the district, and instituted this action in the chancery court of Phillips

County to restrain the commissioners from attempting to do any work on the levee except that part which lies south of Walker Street, the contention being that the act of 1913 only gave authority to expend money on that part of the levee.

The legality of the proceedings of the commissioners in levying assessments and issuing bonds is assailed on other grounds which will be noticed later.

The principal contention in the case is the one above referred to, namely, that the commissioners are exceeding their authority in expending money in enlarging and strengthening a part of the levee not referred to in the recent statute.

This controversy, as before stated, involves the construction of the language of the act of 1913 to determine whether the law makers intended to give authority to the commissioners to enlarge and strengthen the whole of the levee or whether they meant to separate a portion of the levee and authorize the work to be done on that part alone.

There are certain elemental rules of construction to be observed in the interpretation of statutes from which we will not depart. One is that, where a law is plain and unambiguous, there is no room left for construction, and neither the exigencies of a case nor a resort to extrinsic facts will be permitted to alter the meaning of the language used in the statute. Even where a literal interpretation of the language used will lead to harsh or absurd consequences, that meaning can not be departed from unless the whole of the statute furnishes some other guide. These rules of interpretation are set forth in the recent case of *State ex rel. Attorney General* v. *Trulock,* 109 Ark. 556, and need not be further enlarged upon at this time.

The contention of appellants is that the Legislature, in the enactment of this statute, has not undertaken to deal with the whole of the levee, but to separate one part from the other and authorize work to be done upon that.

The question we have to consider is, whether the language of the whole statute, when fairly construed, refers to the whole of the levee, or to part of it.

The language employed in the statute carries authority "to enlarge and strengthen the levee in said district," and we are of the opinion that the succeeding words in that paragraph were intended to refer to a description of the whole levee, and, though it proves to be an inaccurate description, it does not have the effect of limiting the antecedent words. The word "which" is used as a simple relative pronoun and relates to the term "levee in said district," and therefore the words which follow must be construed as an attempt at a description of that which precedes. In other words, the lawmakers were not attempting to separate the line of the levee into parts and describe the part which is referred to in granting authority to the commissioners; but they clearly meant to grant authority to the commissioners to enlarge and strengthen the "levee in said district," and the error or inaccuracy occurs in their attempt to describe the levee in the whole district.

It is unnecessary to determine how far the word "approximately" can be stretched so as to make it fit the description. We are inclined to think, speaking relatively, that a point a mile and a quarter north of Walker Street could not be held to be "approximately at the southeast corner of the Walker Street levee;" but it is, as before stated, unnecessary to pass upon that question, for we conclude that this error relates merely to the description of the whole levee, and that it is not fatal to the act, even if it be conceded to be erroneous.

The words "levee in said district" are, of themselves, sufficient description, and everything which follows in that paragraph could very well have been omitted. This furnishes a sufficient reason, if no other existed, for saying that the error contained in the language which follows is not fatal to the description of the subject-matter of the statute.

We do not overlook the fact that, under the original act of 1897 organizing the district, the levee began at the southeast corner of the Walker Street levee, and this is probably what induced the framers of the statute to adopt the erroneous description. The description of the levee had been amended by the act of 1907, which, under settled rules of construction, substituted the description in the amendatory act for that contained in the original, and the fact that the original act only was mentioned does not lessen the force of the descriptive words used applying the act of 1913 to the whole line of the levee. Notwithstanding the fact that the district had been enlarged by the amendatory statute of 1907, yet the fact remains that the Helena Improvement District was organized by the act of 1897, but the words "levee in said district" referred to the territorial bounds of the district as enlarged by the amendatory act of 1907. Acts 1907, No. 73, page 166. The law-makers, in the enactment of the recent statute, were dealing with the district as it existed at that time, and the language used, very clearly, we think, refers to the whole line of the levee.

We are strengthened in this view by the facts set forth in the complaint that the levee in front of the whole district "is not of adequate height or construction to be serviceable as a levee for said district, and that the Walker Street levee is no longer adequate to retain any overflow waters from the Mississippi River from invading the district," and that, if only the levee south of Walker Street should be enlarged and strengthened, "the property within the district would not be protected from the high water, inasmuch as the water could come over the levee that is located north of Walker Street."

The allegations of the complaint show that a construction of the language of the statute, to the effect that only the levee south of Walker Street was to be enlarged and strengthened, would import a purpose on the part of the lawmakers to do the absurd thing of authorizing a large expenditure of money from which no good could result.

It is true that the language of the statute indicates a legislative determination of what was necessary to be done to the levee and the extent of the authority needed by the commissioners to improve the lands in the district, but the construction which we adopt does no violence to the language of the act, but, on the contrary, we think, is in accord with its literal meaning.

The case of *Cypress Creek Drainage District* v. *Wolfe,* 109 Ark. 60, 158 S. W. 960, recently decided by this court, is pressed upon our attention by learned counsel for appellants as decisive of the question now presented. It is true that in that case we found it necessary, as in this, to construe certain language employed and we held that the Legislature had not conferred the authority which the commissioners of the district were attempting to exercise. The statute involved in that case bore some *indicia* of a design on the part of the lawmakers to confer the authority claimed by the commissioners,. but our conclusion was that the language of the statute could not be interpreted so as to give authority to that extent. We entertain now no doubt of the correctness of that conclusion, but the language here is different, and we think that we have already expressed a fair interpretation of what the lawmakers meant by the language which was used.

The charge that the commissioners are about to levy assessments for the purpose of enlarging and strengthening a portion of the levee not embraced within the authority conferred by the act of 1913, is, therefore, groundless.

An attack is made on the validity of this statute in authorizing the additional improvement ''without the formality of a petition signed by a majority in value of the land owners of said district, and without waiting to secure the consent of any number of land owners in said district.''

The constitutional provision regulating improvement districts applies only to territory exclusively urban and does not apply to that which includes contiguous sub-

urban territory. *Butler* v. *Board of Directors of Fourche Drainage District,* 99 Ark. 100.

The enactment of the statute presupposes a legislative finding as to the consent of a majority of the land owners, and, therefore, it is within the power of the lawmakers to dispense with the necessity for formal petition or ascertainment by any other agency. The statute is not rendered invalid on account of the omission to provide some other agency for the ascertainment of the consent of a majority of the land owners.

There is another contention that the commissioners exhausted their authority in changing the resolution fixing the amount and percentage of assessments to be paid each year. The contention is that the first resolution, passed on August 18, 1913, exhausted the power of the commissioners and that the subsequent resolutions, passed on August 29 and October 23, 1913, were, therefore, void.

The statute gives authority to the commissioners to make plans for the improvement and to cause assessments of benefits to be made by the assessors in accordance with the original act of 1897 and amendatory act of 1907. The original act, which in that respect remains unchanged, authorizes the commissioners, after the assessment of benefits has been made by the assessors, to assess the cost of the improvement upon the real property in the district and apportion it on the separate tracts or lots thereof and to provide for the annual installments in which it is to be paid.

There is nothing in the act which limits the authority of the commissioners in assessing the cost of the improvement until it is completed, and if the first resolution contained an error as to the cost of the improvement, the power of the commissioners to levy correct assessments was not impaired by it. The act expressly provides that, if the first assessments should prove insufficient to complete the improvement, the board of improvement could make another assessment. Therefore,

if, before any of the assessments were actually collected, it was ascertained that the amount of the original levy was insufficient to make the improvement, the commissioners had the power to change the assessment before it became effective. This was equivalent to, or, rather, was embraced in, the power to increase assessments or to levy additional assessments.

Further complaint is made that the commissioners were about to issue bonds or other obligations for the payment of money and interest on money borrowed.

The act of 1913 expressly authorizes the board to fund the existing indebtedness of the district and "in order to hasten the work, the board shall have power to borrow money and issue negotiable evidences of indebtedness therefor, and to pledge and mortgage the assessment of benefits as security for the repayment of such loans."

The authority to borrow money necessarily implies the power to contract for the payment of interest not exceeding the legal rate, and that authority is not exceeded in the proposal to issue bonds bearing 6 per cent interest. *Altheimer* v. *Board of Directors of Plum Bayou Levee District,* 79 Ark. 229.

Our conclusion, upon the whole case, is that the attack upon the proceedings of the commissioners is not well founded, and that the decree of the chancellor dismissing the complaint for want of equity was correct. The decree is therefore affirmed.