CALDARERA *v*. McCARROLL, COMMISSIONER OF REVENUES.

4-5599                                                      129 S. W. 2d 615

Opinion delivered June 12, 1939.

J. *Hugh Wharton* and *Rose, Loughborough, Dobyns & House*, for appellant.

*Frank Pace, Jr., Jack Holt,* Attorney General, *Millard Alford,* Assistant Attorney General, for appellee.

*Charles W. Mehaffy* and *Joseph. M. Hill, amici curiae.*

HUMPHREYS, J. Appellants are wholesale dealers of intoxicating beer and as such have brought this suit in the chancery court of Pulaski county to enjoin Z. M. McCarroll, Commissioner of Revenues of the State of Arkansas, from enforcing § 1 of Act 310 of the Acts of 1939 on the ground that it increases the excise or privilege tax imposed on wholesalers of intoxicating beer under Act 7 of the Acts of 1933, 108 of the Acts of 1935, and 236 of the Acts of 1937, and is in violation of § 2 of Amendment No. 19 to the Constitution of the State of Arkansas, which Constitutional provision is as follows:

"None of the rates for property, excise, privilege, or personal taxes now levied shall be increased by the General Assembly, except after the approval of the qualified electors voting thereon at an election, or in case of an emergency, by the vote of three-fourths of the members elected to each house. of the General Assembly."

This provision of the Constitution inhibits the General Assembly from increasing the rates on property, excise, privilege or personal taxes. now levied, except after the approval of the qualified electors voting thereon at an election, or in case of an emergency, by a vote of three-fourths of the members elected to each house of the General Assembly.

It is conceded by appellee that the qualified voters of the state have not authorized the General Assembly to increase the rates for property, excise, privilege or personal taxes and that Act 310 of the Acts of 1939 was not passed by a vote of three-fourth of the members

of the General Assembly, so it follows that if Act 310 of the Acts of 1939 increases existing rates of excise or privilege taxes imposed upon wholesale dealers of intoxicating beer the act is unconstitutional. The converse is of course true. If Act 310 of the Acts of 1939 does not increase the rate of existing excise or privilege taxes imposed upon wholesale dealers of intoxicating beer by other statutes then the act is constitutional.

The excise or privilege tax imposed upon wholesale dealers of intoxicating beer in the State of Arkansas under the acts mentioned above is at the rate of one dollar and fifty cents for thirty-two gallons (and proportionately for larger or smaller quanities) on beer received, handled, possessed, manufactured or sold. These acts do not authorize the wholesale dealer to collect the taxes from retailers or pass it on to consumers. Under those acts it was strictly an excise or privilege tax imposed upon the wholesale dealer.

The title and § 1 of Act 310 of the Acts of 1939 read as follows:

"An act to levy a consumers' sales tax upon liquor, beer and wines: 'To provide funds for the University of Arkansas School of Medicine and a charity hospitalization program in conjunction therewith; to provide funds for the sanatorium building fund; to provide funds for the hospitalization of indigent sick, for the county tuberculosis fund, for the State Health Department, and for other purposes.'

"Section 1. There is hereby levied and imposed upon all sales of beer at retail within this state a new tax to be known as the 'Beer Consumers Sales Tax' which shall be paid by the consumer and shall be collected as hereinafter provided. Said Beer Consumers Sales Tax shall be levied at the rate of three dollars and fifty cents ($3.50) per barrel of thirty-two (32) gallons, (and proportionately for larger and smaller quantities) and shall be collected by the wholesaler from the retailer, who in turn shall pass on said tax to the consumer, if the retailer elects, by an increase in the retail price of beer of no more than one cent per bottle or glass of approximately

twelve ounces. Said tax shall be collected by the Commissioner of Revenues from the wholesaler as heretofore provided in such manner and under such regulations as the Commissioner shall deem necessary. . . ."

There is no ambiguity in the language used in Act 310 of the Acts of 1939 that might be or could be construed to mean that the Legislature intended to increase the rate of the privilege or excise tax imposed upon the wholesale dealers of intoxicating beer by other acts of the Legislature. It is an excise or privilege tax imposed upon the retailer of intoxicating beer with the privilege of the retailers to pass it on to the consumers by increasing the retail price of intoxicating beer of no more than one cent per bottle or glass of approximately twelve ounces. It has nothing whatever to do with the excise or privilege tax imposed by existing acts upon the wholesale dealer. They are separate taxes imposed upon different classes of people which the retailer may pass on to the consumer by including it in the retail price under certain restrictions, or the retailer may absorb it himself if he wants to sell beer at the same old price.

The General Assembly expressed itself in such concise, clear and unambiguous language that there is no room for construction by the court. This court said in the case of *Cunningham* v. *Keeshan,* 110 Ark. 99, 161 S. W. 170, that: "There are certain elemental rules of construction to be observed in the interpretation of statutes from which we will not depart. One is that, where a law is plain and unambiguous, there is no room left for construction, and neither the exigencies of a case nor a resort to extrinsic facts will be permitted to alter the meaning of the language used in the statute."

And again said in the case of *Arkansas Valley Trust Co.* v. *Young,* 128 Ark. 42, 195 S. W.. 36, that: "Where the language of a statute is unambiguous the intention of the Legislature must be gathered therefrom. If we change it, we thereby encroach upon the peculiar function of the sovereign power lodged in a coordinate branch of the government."

Our conclusion is that the legislative intent by the passage of Act 310 of the Acts of 1939 was to levy a new tax upon different parties other than a tax under the previous beer laws of the state and is not an attempted increase of the taxes levied by previous acts upon wholesale dealers of intoxicating beer and that its passage was not inhibited by Amendment No. 19 to the Constitution of the State of Arkansas. We do not understand that appellants seriously contend that the General Assembly does not have the power to levy a new and distinctly separate tax from that existing under previous statutes upon the privilege of sale to the consumer of intoxicating beer, but their argument is that the effect of the passage of Act 310 of the Acts of 1939 was to impose upon wholesalers an increase in the rate of pre-existing taxes imposed upon them. We cannot agree with them as to the effect of the passage of Act 310 of the Acts of 1939. As stated above the effect was to impose a new tax upon a different party and to make wholesale dealers the agent of the state for collecting the new tax for the state.

No error appearing the decree is affirmed.

SMITH, MEHAFFY, and BAKER, JJ., dissent.

GRIFFIN SMITH, C. J., and HOLT, J., concur.

GRIFFIN SMITH, C. J., (concurring). Act No. 7, approved August 24, 1933, is an act to permit the manufacture, sale, and distribution of light wines and beers, and to provide for taxing such products.

The term ''beer'' was defined as ''any fermented liquor made from malt or any substitute therefor, and having an alcoholic content of not more than 3.2 per cent. by weight.''

''Intoxicating liquor'' was declared to mean vinous, malt fermented liquor or distilled spirits with an alcoholic content in excess of 3.2 per cent. by weight.

Certain taxes were levied by § 4. By § 5 it was provided that funds realized from such taxes were to be used for the state's constitutional, educational, and charitable institutions and departments, such moneys to be deposited in the treasury to the credit of ''The Beverage Tax Fund, which is hereby created.''

Section 10 is: "The purpose of this act is to legalize the manufacture and sale within the state of beer and light wine of an alcoholic content not in excess of 3.2 per cent by weight, and to so regulate the business of manufacturing and selling such liquors as to prevent the illicit manufacture and consumption of liquor having an alcoholic content in excess of 3.2 per cent by weight, the manufacture and sale of which it is not the purpose of this act to legalize."

Section 13 directs that "Before any permit authorized by this act shall be issued and delivered to any applicant therefor, such applicant shall make and subscribe to an oath that he will not allow any intoxicating liquors as defined by this act, of any kind or character, including beer or light wine and distilled spirits having an alcoholic content in excess of 3.2 per cent. by weight, to be kept, stored, or secreted in or upon the premises described in such permit."

Section 19, in part, is: "It shall be unlawful for any brewer or distributor of light wines or beer to manufacture or knowingly bring upon his premises and keep thereon any beer or wine of an alcoholic content in excess of 3.2 per cent. by weight, or any distilled spirits of any alcoholic content whatever."

It will be noted that in creating the fund arising from the sale of light wines and beer, such fund is designated a "Beverage Tax Fund." However, in § 10, the wines and beer legalized by the act are referred to as "such liquors," the alcoholic content being expressly limited to 3.2 per cent.

There can be no doubt that the legislature intended to adopt, and did adopt, the definition found in the act of Congress generally referred to as the Volstead Act, the determination under the federal statute having been that beer containing not in excess of one-half of one per cent. of alcohol by volume was not intoxicating.

Act 108, approved March 16, 1935, legalized the sale of intoxicating liquors, title being "The Arkansas Alcoholic Control Act." Between 1933 and 1935 national prohibition was repealed, and this state proposed to aban-

don the so-called "dry" policy it had fostered for so many years.

The 1935 enactment (§ 6) provided that "Malt and vinous beverages containing more than 3.2 per cent. of alcohol by weight and not more than 5 per cent. of alcohol by weight shall be taxed and regulated as provided for malt and vinous beverages containing not more than 3.2 per cent. alcohol by weight under the provisions of act No. 7 of . . . 1933."

The word "malt" was defined as "liquor brewed from the fermented juices of grain and containing not more than 5 per cent. of alcohol by weight. Beer containing not more than 5 per cent. of alcohol by weight and all other malt beverages containing not more than 5 per cent. of alcohol by weight are not defined as malt liquors, and are excepted from each and every provision of this act."

The effect of act 108 was to classify as malt liquor any commodity containing more than 5 per cent. of alcohol, and to designate as "malt beverages" those drinks having an alcoholic content of more than 3.2 per cent. and not more than 5 per cent. Act No. 7 had classified any malt fermented liquor having an alcoholic content of more than 3.2 per cent. as an "intoxicating liquor." Act 108 applied a new term to the commodity occupying the twilight zone between "3.2 per cent. and not more than 5 per cent.," in consequence of which "malt beverages" emerged for the purpose of sale and taxation, as distinguished from beer having an alcoholic content of not more than 3.2 per cent.

Recognition of *light wines and beer,* as defined by the 1933 enactment, was given by the general assembly of 1939. Section 4 of act 173 is: "Because doubts and uncertainties need to be speedily resolved as between the industries affected, the courts and the public, with respect to what apparently was, and is, the intention of the general assembly *to keep separate and apart the taxation, regulation and control of the manufacture, sale, and distribution of light wines and beers, as expressed in act No. 7 of 1933, from alcoholic liquors, as expressed*

*in act No. 108 of 1935,* an emergency is hereby declared to exist.'' [Italics supplied.]

While act 108 undertook to except from its provisions all malt beverages containing not more than 5 per cent. of alcohol, and to tax and regulate malt beverages containing more than 3.2 per cent. of alcohol and not more than 5 per cent. under the provisions of act No. 7 of 1933, yet in every sentence of every classification, and in every definition or explanation in the two acts, it was made clear that in the first instance a non-intoxicating malt beverage was legalized, while by act 108 an entirely different commodity was dealt with. Indeed, by the express language of act 7, any malt fermented liquor having an alcoholic content of more than 3.2 per cent. is an intoxicating liquor, *and it is not the commodity taxed or authorized to be sold.*

Amendment No. 19 to our Constitution was adopted in November, 1934. It prohibits any increase of the rates of property, excise, privilege, or personal taxes, *as then levied,* except by vote of the people, or in case of an emergency, then by a vote of three-fourths of the members elected to each house of the general assembly.

The tax on non-intoxicating malt beverages was an existing tax when the amendment was adopted, and therefore cannot be increased except in the manner mentioned.

Intoxicating malt beverages—those having an alcoholic content of more than 3.2 per cent. and not more than 5 per cent.—emerged from the legislative mill in 1935 as a new product, a separate and distinct commodity occupying the field between the extremes of intoxicating liquors and non-intoxicating beers. Being a new product, it was made legally saleable in this state *after* Amendment No. 19 was adopted, and therefore the taxes levied and the permits required by act 310 of 1939 are not within the purview of the amendment.

Mr. Justice HOLT concurs in the views herein expressed.