McCARROLL, COMMISSIONER OF REVENUES *v.* FARRAR.

4-5825 134 S. W. 2d 561

Opinion delivered November 27, 1939.

*Jack Holt*, Attorney General, *Millard Alford*, Asst. Atty. General, *Frank Pace, Jr.*, and *Lester Ponder*, for appellant.

*J. Hugh Wharton* and *Rose, Loughborough, Dobyns & House*, for appellees.

*Joseph M. Hill, Amicus Curiae.*

MEHAFFY, J. This action was instituted in the Pulaski chancery court by H. E. Farrar, appellee, a retail liquor dealer. He alleges this suit is brought on behalf of himself and all others interested in the enforcement of the illegal exactions mentioned in this complaint. He alleged that act 310 of the Acts of 1939 is unconstitutional. This suit is against Z. M. McCarroll, Commissioner of Revenues for the State of Arkansas, and wholesale liquor dealers.

A. A. Haynie filed an intervention on behalf of himself and other consumers of liquor who might be interested in enforcement of the illegal exactions described in the complaint.

The wholesale dealers who were made defendants filed answer and cross-complaint and stated that this answer is filed on behalf of themselves and all others interested against the enforcement of the illegal exactions described in the complaint. All of them, the intervention, answer and cross-complaint, alleged that act 310 of the Acts of 1939 was unconstitutional and void.

Z. M. McCarroll, Commissioner of Revenues for the State of Arkansas, filed a demurrer to the complaint, intervention and cross-complaint on the ground that the pleadings do not state facts sufficient to entitle plaintiff to the relief prayed, or to any relief whatsoever. The Commissioner of Revenues also filed answer denying the material allegations of the complaint, and alleged among other things, that on June 12, 1939, act 310 above referred to was held valid. McCarroll, both as Commissioner and as a citizen, asked that plaintiff's complaint be dismissed.

The complaint in the case of *Mike and Joe Caldarera* v. *Z. M. McCarroll, Commissioner,* 198 Ark. 584, 129 S. W. 2d 615, was introduced as an exhibit. Also a copy of the decree in that case was introduced. The plaintiff then filed a demurrer to the answer of Z. M. McCarroll on the ground that the allegations do not state facts sufficient to constitute a defense.

The court overruled the demurrer of the Commissioner of Revenues and sustained the demurrer filed by the plaintiff to the answer of the Commissioner, and

the decree of the chancellor permanently enjoined Z. M. McCarroll, Commissioner, from collecting from all wholesalers of liquor the three per cent. tax, but provided, however, that during the pendency of the appeal an amount equal to the amount of tax which would be due if said act were valid, shall be paid by said wholesalers into the registry of the court at the time said tax would be due under the act, if valid, to be held by the clerk of the court subject to further orders of the court.

The Commissioner of Revenues objected and excepted to all provisions of said decree, and prayed an appeal to the Supreme Court, which was granted. The case is here on appeal.

The appellant contends that the constitutionality of act 310 of the Acts of 1939 is *res judicata* by virtue of the decision in the case of *Caldarera* v. *McCarroll,* 198 Ark. 584, 129 S. W. 2d 615.

15 R. C. L., § 429, gives the following statement of the doctrine of *res judicata*:

"The doctrine of *res judicata* is a principle of universal jurisprudence forming part of the legal systems of all civilized nations. It may be said to inhere in them all as an obvious rule of expediency and justice. Briefly stated, this doctrine is that an existing final judgment or decree rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, upon a matter within its jurisdiction, is conclusive of the rights of the parties or their privies, in all other actions or suits in the same or any other judicial tribunal of concurrent jurisdiction, on the points and matters in issue in the first suit."

C. J., Volume 34, p. 743, states the two main rules of the doctrine of *res judicata*: "(1) The judgment or decree of a court of competent jurisdiction upon the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same cause of action either before the same or any other tribunal. (2) Any right, fact, or matter in issue, and directly adjudicated upon, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered upon the

merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether the claim or demand, purpose, or subject-matter of the two suits is the same or not.''

Was the suit of Caldarera, above, a judgment of a court upon the merits? The question in that case was whether act 310 of the Acts of 1939 was unconstitutional, and the court in that case held that it was a valid act. Since that was the question in the case, it certainly cannot be claimed that it was not a judgment upon the merits. And if a judgment upon the merits, it concludes the parties and privies and constitutes a bar to a new action or suit involving the same cause of action, either before the same or any other tribunal.

The Constitution of the State of Arkansas provides that any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever. Under this provision of the Constitution, the suit in the Caldarera case was brought.

The instant suit was instituted under the same authority.

In the case of *Rigsby* v. *Ruraldale Consolidated School District No. 64,* 180 Ark. 122, 20 S. W. 2d 624, this court said:

''In support of the plea of *res judicata* set out above appellees introduced the pleadings and decree rendered upon them, and the evidence in the Johnson case by the Garland chancery court.

''The trial court in the instant case dismissed appellant's complaint for the want of equity, from which is this appeal.

''The action of the trial court in dismissing appellant's complaint was proper. The plea of *res judicata* and testimony introduced in support thereof justified the court's action.''

The court further said in the same case: ''The only authority he had to bring the suit was under § 13, art. 16, of our State Constitution.'' That is the section above

quoted, authorizing a citizen to bring suit on behalf of himself and others.

The court, continuing, said: "C. J. Rigsby instituted the instant case under the same authority, and all citizens in the district were bound by the result of the suit brought against appellees by R. M. Johnson upon all issues presented by the pleadings and testimony in the Johnson case." The court cites 15 R. C. L., pp. 1026 and 1035. Page 1026, § 500, R. C. L., reads as follows:

"The doctrine of virtual representation whereby persons may be bound by a judgment, although not parties to the suit, on the theory that they are sufficiently represented by those who are parties on the record, has been applied to cases in which there are large numbers of parties in interest, and whenever the parties in interest are so numerous as to make it impracticable or very inconvenient and expensive to bring them all before the court, it is sufficient that such a number be made plaintiffs or defendants as will fairly represent the interest of all standing in like character and responsibility, and a judgment against them will have the effect of *res judicata* against all who were thus represented."

Section 510, page 1035, of the same volume reads as follows: "Where a citizen and taxpayer brings an action in behalf of himself and other taxpayers against a municipality every citizen is regarded as a party to the proceedings, and bound by the judgment entered therein. In such cases the people are regarded as the real parties. For example, the judgment in a suit brought by taxpayers of a town against the town and a railroad company, to enjoin the issue by the town of bonds to the company, by which it is adjudged that such bonds should issue, is binding on all the other taxpayers of the town, though not parties to the suit, and the questions involved therein are *res judicata* in a second suit by another taxpayer to restrain the payment of interest on the bonds. In all such cases, however, the first judgment must be *bona fide*."

We think the Rigsby case above cited settles this question, and it is not necessary to review other authorities.

The constitutionality of act 310 was the question involved in the Caldarera case, and it is also the question involved in this case. In each case, the journal of the Senate was introduced. In the instant case, the complaint and other pleadings and the decree in the Caldarera case were all introduced in evidence.

If a suit of this character is not a bar, then one citizen after another might institute a suit for himself and others against the Commissioner of Revenues, and if the judgment in one suit was not a bar, this could continue until every citizen in the state had brought suit. The doctrine of *res judicata* is not only to protect the individual, but it is a matter of public policy.

We have reached the conclusion that the Caldarera case above referred to settles this case, and is *res judicata*. The chancery court erred in sustaining the demurrer of the plaintiff and overruling the demurrer of the Commissioner.

The decree of the chancellor is reversed, and the cause is dismissed.

SMITH and McHANEY, JJ., concur.

SMITH, J. (Concurring). The question presented for decision in this case is whether Act 310 of the Acts of of 1939, commonly referred to as the Nyberg Act, is a law, notwithstanding the fact that, when placed upon its final passage in the Senate, it did not receive the vote required by the Constitution to enact it, unless the vote of Senator Gutensohn, who voted for its passage, is counted. The suit was brought by appellee, a retail liquor dealer, and was suggested by and is based upon the opinion of this court in the recent case of *Matthews* v. *Bailey*, 198 Ark. 703, 130 S. W. 2d 1006.

One of the questions presented in the Matthews case, *supra,* was whether the emergency clause to a bond refunding Act passed at the 1939 session of the General Assembly had been adopted, the fact being that the vote required by the Constitution was not cast for the emergency clause unless the vote of Senator Gutensohn, who had voted for this clause, was counted for it. It was held

in the Matthews case that Gutensohn's vote for the emergency clause to the bond refunding act could not be counted because he had served as a senator under the appointment of the Governor, and that, as the Governor did not have the authority to appoint a senator, the vote of Gutensohn must be and was excluded.

It was later learned by some one who had examined the journal of the 1939 session of the Senate that Act 310, supposed to have been enacted at the same session of the General Assembly, had not received the vote required by the Constitution unless the vote of Senator Gutensohn, who had voted for Act 310, was counted.

Assuming that the same rule would be applied to Act 310 which had been applied to the emergency clause of the bond refunding Act (both of which had been passed by the vote of Senator Gutensohn and without whose vote neither would have passed), this suit was brought to enjoin the Commissioner of Revenues from enforcing the provisions of Act 310. Upon the authority of the opinion in the Matthews case, the Commissioner of Revenues was enjoined by the court below from enforcing Act 310, and this appeal is from that decree.

The majority reversed that decree, and now hold that Act 310 is law, although it did not receive the vote required by the Constitution if Gutensohn's vote is excluded, as the opinion in the Matthews case held should be done.

I concur in the judgment, holding Act 310 to be a law, because Gutensohn was a *de facto* member of the Senate, having been recognized by the Senate as such. But, upon this phase of the case, all was said in the dissenting opinion in the case of *Matthews* v. *Bailey*, to which the majority do not refer, that need be said.

The majority opinion in the Matthews case, *supra,* states—and I think correctly so—that the Governor has never had the power to appoint a member of the General Assembly; and if this be true, and it be true also that legislation has not been enacted into law, which depended upon the vote of a member of the General Assembly appointed by the Governor, no one may certainly know

what laws appearing in the Digest of our statutes are valid. I, therefore, view with great satisfaction the unwillingness of the majority to follow the Matthews case to its logical conclusion.

The majority held that the emergency clause had not been adopted in the Matthews case, because Gutensohn's vote was essential to its adoption. It is conceded here that Act 310 was not passed unless Gutensohn's vote is counted for it. If the Matthews Case is followed, Act 310 was not passed by the constitutional vote, yet the majority opinion in the instant case supplies this defect. The Nyberg Act was not passed by the General Assembly unless Gutensohn's vote is counted for it, admittedly not; yet, the majority now pass it and hold it valid, the decision in the Matthews case to the contrary notwithstanding. The majority reach this conclusion through the application of the doctrine of *res adjudicata*. The Constitution prescribes, in minute detail, how legislation may be passed and the vote in each House essential for that purpose. But these requirements may now be circumvented. It is essential only that some one attack an Act of the General Assembly upon some one or more of the innumerable grounds upon which such legislation may be and has been attacked, without raising the question that it did not receive the required vote, when, presto! That which was not a law becomes a law. The constitutional requirement as to the vote essential to pass the Act becomes unimportant and is dispensed with. *Res Adjudicata!*

In my opinion—and I say it with the greatest respect for my associates who make the majority opinion—this holding is even more chaotic than the holding in the Matthews case that legislation dependent upon Gutensohn's vote was not enacted into law, and I am, therefore, constrained to again register my protest and dissent.

How can a bill become a law which did not receive the vote required by the Constitution for that purpose? The majority answer: *Res Adjudicata.* The question might have been raised in the case of *Caldarera* v. *McCarroll,* Commissioner, 198 Ark. 584, 129 S. W. 2d 615; but was not. Therefore, the fact that the Nyberg Act

was not passed as required by the Constitution may not now be raised, and, as it was not raised when it might have been raised, the majority now enact into law what otherwise would not be law. *Res adjudicata!* This method of enacting legislation finds no support in the Constitution and is in flagrant conflict with the provisions of the Constitution.

Now, it is true, of course, as the majority say, that, when one is sued, he must make his defenses, and all of them, and any defenses which are omitted and not pleaded are as much concluded under the judgment in the case as are those which were interposed. Innumerable' cases, in addition to those cited by the majority opinion, may be found to that effect, and no one questions their soundness. But they do not apply here, for the simple and sufficient reason that this is a method of legislating not authorized by the Constitution. You may not, if the Constitution is to be followed, *res adjudicata* legislation into existence. I have made a new verb, for which, as a verb, no definition can be found; but it was necessary to do so to describe a result for which no authority exists. A new verb is essential and must be added to our vocabulary, if this method of legislating is to be permitted.

Under the decision in the Matthews case, the published Acts, upon which the public has heretofore relied, become unreliable. You must search the journals of both Houses of the General Assembly to see whether the passage of any Act was dependent upon the vote of a senator or representative who had served under appointment from the Governor, and this is true, not only of the session of 1939, but of many, if not all, of the previous sessions of the General Assembly since the adoption of our present Constitution, because most, if not all, of the Governors have made such appointments, and the majority opinion in the Matthews case correctly said the Governor has never had such power.

Under the opinion in the instant case, confusion has become worse confounded. You must now also search the records of the courts to see if an invalid Act has been *res adjudicated* into life, and this will be most difficult. Had one, who was pursuing, with the utmost diligence,

the inquiry, as to what is the law, examined the case of *Caldarera* v. *McCarroll, Commissioner,* and had examined, not only the opinion in that case, but the briefs therein filed and the transcript itself, he would have received no intimation that the question of the qualification of a member of the General Assembly was involved. There was no such question in that case. In all probability, the eminent counsel in that case would not have raised the question, had they been aware of the fact, that Gutensohn had cast the deciding vote. Yet, the majority are now holding that a question not raised in the Caldarera case, and not called to our attention, and not considered or decided by us, has become decisive of the question that Act 310—the Nyberg Act—is law, although, under the holding in the Matthews case, it did not receive the number of votes required by the Constitution to enact it. The majority have called a dead Act to life by invoking the doctrine of *res adjudicata.* If any effect whatever is given to the opinion in the Matthews case, it must be true that Act 310 was not the law until June 12, 1939, the date of the opinion in the Caldarera case. Prior to that date it was a stillborn child of the Legislature, and was not law until the breath of life was breathed into its dead body by the opinion in the Caldarera case.

If it were possible for this court to enact legislation under any circumstances, even by the *res adjudicata* method, the Caldarera case does not afford that opportunity. The majority decide that it does, because it is now said that the Caldarera case was a class suit. This holding only increases the confusion, if that is not impossible.

It may be freely conceded—and I make the concession—that the decree affirmed in the Caldarera case, sustaining the demurrer to the complaint filed in that case, adjudicated the issues raised by the demurrer, and is now *res adjudicata.* Innumerable cases might be added to those cited in the majority opinion to that effect. But before the Caldarera case becomes *res adjudicata* here, two other questions must be considered: (1) Are the parties in the two suits the same? and (2) Are the issues identical?

The majority say the Caldarera suit was a class suit, which included everybody, whether parties to the suit or not, and that the issues are identical. A study of the opinion, and an examination of the record, in the Caldarera case, will disclose that neither of these propositions can be sustained.

The question raised in the complaint in the Caldarera case was whether the Caldareras and other wholesale dealers in beer could be required to pay the excise tax of $3.50 on each barrel of beer sold by wholesale beer dealers which the Revenue Commissioner was demanding under the alleged authority of Act 310 of the Acts of 1939. The sole question presented, considered and decided in the Caldarera case was whether this Act provided for an increase in the excise tax or was a new tax. The insistence was that Act 310 was in violation of § 2 of Amendment No. 19 to the Constitution, which provides that ''none of the rates for property, excise, privilege, or personal taxes now levied shall be increased by the General Assembly, except after the approval of the qualified electors 'voting thereon at an election, or in case of an emergency, by the vote of three-fourths of the members elected to each house of the General Assembly.'' The point at issue and the point decided was (quoting from the Caldarera opinion) that ''There is no ambiguity in the language used in Act 310 of the Acts of 1939 that might be or could be construed to mean that the Legislature intended to increase the rate of the privilege or excise tax imposed upon the wholesale dealers of intoxicating beer by other acts of the Legislature.'' It is upon that decision, no other question being raised or decided, that the majority now hold that Act 310 becomes a law, although it did not receive the vote declared necessary in the Matthews case; in other words, Gutensohn's vote is sufficient to establish an emergency as required by § 2 of Amendment No. 19 to the Constitution when applied to Act 310, but was not sufficient for that purpose in the Matthews case.

The majority in the Caldarera case expressly recognized the fact that the Caldareras were not suing for all classes of dealers in intoxicants, and is predicated upon

the proposition that there are different classes of dealers. Distinguishing the existing tax from the additional tax which Act 310 imposed on wholesale beer dealers, the opinion stated: ''They are separate taxes imposed upon different classes of people. : . . As stated above the effect (of this Act) was to impose a new tax upon a different party. . . .''

That suit was a class suit brought on behalf of wholesale dealers in beer, and on behalf of no one else. The appellee here is a seller of liquor at retail, and is not a wholesale dealer in beer. He did not have and does not have the slightest interest in the tax which wholesale beer dealers shall be required to pay. But for the implications arising from the majority opinion appellee had every reason to believe that he was not interested in that case, and would not be affected in his business by it, as it was no concern of his what tax wholesale beer dealers were required to pay. It was no money out of his pocket.

Appellee here was not of the class which sued there, and was not interested in the relief which they prayed. They could not, therefore, be said to have represented appellee when there was no common interest. Had the court held in the Caldarera case that the tax of $3.50 per barrel on beer was not legal, that holding would have no bearing on the tax which appellee was required to pay as a retail liquor dealer, not engaged in the wholesaling of beer.

The rule of mutuality of estoppel is applied by all the authorities to the doctrine of *res adjudicata.* At § 1407 of the chapter on Judgments in 34 C. J.; p. 988, the law is declared to be that ''It is a rule that estoppels must be mutual; and therefore a party will not be concluded, against his contention, by a former judgment, unless he could have used it as a protection, or as the foundation of a claim, had the judgment been the other way; and conversely no person can claim the benefit of a judgment as an estoppel upon his adversary unless he would have been prejudiced by a contrary decision of the case.'' Two pages of cases are cited in the note to this text, and among the hundreds of others are our own cases of

*Treadwell* v. *Pitts,* 64 Ark. 447, 43 S. W. 142; *Bell* v. *Wilson,* 52 Ark. 171, 12 S. W. 328, 5 L. R. A. 370.

Inasmuch as appellee could neither have been prejudiced nor benefitted by the decision in the Caldarera case, and was not a member of the class in whose behalf that suit was brought, it is far from clear how he is concluded by it.

The majority opinion cannot be soundly defended upon the ground that intoxicating liquor is *caput lupinum.* The sale of intoxicating liquor is legal in this State; nor does the deserving merit or the necessities of the institutions to which the proceeds of the tax to be derived from Act 310 will be devoted afford any justification for holding that legislation may be enacted in any manner except that provided by the Constitution of the State.

I concur in the judgment reached in this case, although I dissent from the reasoning by which that judgment was reached. The majority appear unwilling to enforce and follow the holding in the case of *Matthews* v. *Bailey* that Gutensohn's disqualification nullified his vote, and I do not insist that they so hold; indeed, I am so thoroughly convinced that the Matthews decision was erroneous that I welcome this departure by the majority from it. This departure is made obliquely, it is true, but is a departure nevertheless and furnishes a basis for the hope and the expectation that, when necessity requires, the Matthews case will be expressly overruled.

I, therefore, concur only in the judgment of the court holding Act 310 was in force and effect and am authorized to say that Justice McHANEY concurs in the views here expressed.