Ruben MILLER *v.* Timothy LEATHERS, Commissioner of Revenue, et al.

92-390                                    843 S.W.2d 850

Supreme Court of Arkansas
Opinion delivered December 21, 1992

*Oscar Stilley*, for appellant.

*Malcolm P. Bobo*, for appellees.

TOM GLAZE, Justice. This case involves art. 5, § 38 of the Arkansas Constitution as amended by Amendment 19, which became effective in 1934. That amendment provides as follows:

> None of the rates for property, excise, privilege of personal taxes, now levied shall be increased by the General Assembly except after the approval of the qualified electors voting thereon at an election, or in case of

emergency, by the votes of three-fourths of the members elected to each House of the General Assembly.

As can be seen, Amendment 19 requires any rate increase in the taxes then levied and enumerated in it to be approved by a vote of the people or to be passed by a three-fourths vote of the General Assembly.

Arkansas's original gross receipts tax was passed in 1941 and was not one of the taxes set out in the 1934 Amendment. The tax in issue in this lawsuit, Act 63 of 1983, increased Arkansas's sales tax from three-to-four percent, and was passed only by a majority, not a three-fourths, vote of the General Assembly.

The state contends the vote requirement of Amendment 19 does not apply to Act 63 because it increased the sales tax which was not a tax enumerated in the Amendment of 1934. The taxpayer, Mr. Ruben Miller, brings this suit asking this court to apply the Amendment 19 vote requirements to Act 63 and hold that because Act 63 did not receive a three-fourths vote, it is a nullity. His reasoning will be discussed below. Granting summary judgment, the chancellor below rejected the taxpayer's argument and upheld Act 63's constitutionality. At the same time, the chancellor denied the state's motion to impose Rule 11 sanctions against Mr. Miller. We affirm the chancellor's rulings on both points.

In challenging Act 63's validity, Mr. Miller asks us to limit our reading of Amendment 19 to say it prohibits a tax rate increase involving any tax without a vote of the people or a three-fourths vote of the General Assembly.[1] In support of this contention, he argues the Amendment's ballot title which he says omits reference to the enumerated taxes and "now levied" language contained in the text of the Amendment. In sum, Miller suggests Amendment 19 should be construed to read that all tax increases of any kind require a popular vote of the people or a three-fourths vote no matter when those increases are levied. As

---

[1] Miller also cites the case of *Ferstl* v. *McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988), where a group sponsored a propsoed consitutional amendment to change Amendment 19 and the ballot title of the proposed amendment referred to Amendment 19 omitting the "now levied" terminology contained it it.

pointed out, Miller's argument ignores the "now levied" and enumerated taxes language in the text of the Amendment and overlooks the fact that the ballot title of Amendment 19 is not a part of the measure and, therefore, in no way controls the meaning of the Amendment unless the Amendment itself is ambiguous. *Plugge* v. *McCuen*, 310 Ark. 654, 841 S.W.2d 139 (1992). No ambiguity exists here.

This court has construed Amendment 19 and has done so consistent with the chancellor's holding in this case. *See Combs* v. *Glens Falls Insurance*, 237 Ark. 745, 375 S.W.2d 809 (1964); *Caldarera* v. *McCarroll*, 198 Ark. 584, 129 S.W.2d 615 (1939). In *Combs*, for example, the General Assembly enacted by simply majority vote Act 527 of 1963, which increased the privilege taxes on foreign insurance companies. This court held the 1963 Act unconstitutional because Amendment 19, adopted in 1934, provided that none of the rates for privilege taxes *then levied* shall be increased without a three-fourths vote of the General Assembly. Such a privilege tax on foreign life insurance companies was in effect in 1934, and since Act 527 of 1963 involved the tax on life insurance companies, the court held the act violated Amendment 19.

Also, in the early case of *Caldarera*, wholesale dealers of intoxicating beer brought suit contending Act 310 of 1939 violated Amendment 19 because the Act did not receive a three-fourths vote which was required since Act 310 increased a preexisting privilege tax on such wholesalers imposed by law as early as 1933. This court, however, concluded Act 310 was a different and new privilege tax from the one imposed in 1933 and therefore was constitutional since it did not increase the tax previously levied on wholesalers in 1933. Two justices concurred, explaining Act 310 of 1939 levied a tax on a new product made saleable in the state *after* Amendment 19 was adopted and therefore the 1939 tax was not within the purview of the Amendment.

In accordance with the plain language of Amendment 19 and the cases construing it, we must conclude Act 63 of 1983 challenged here does not fall within the Amendment's terms because the tax it increases is the sales tax, which is not one of the taxes enumerated in the 1934 Amendment. Further, since Act 63

increased the 1941 sales tax law which was not in effect at the time of Amendment 19's passage, the General Assembly acted within its authority to pass such an increase by a majority vote. In short, we hold Act 63 constitutional.

On cross-appeal, the state claims Miller's lawsuit was baseless and Rule 11 sanctions should have been imposed against him by the trial court. We disagree.

■ By the terms employed in the Federal and Arkansas Rules 11, an attorney signing a pleading, motion, or other paper on behalf of a party constitutes a certificate that (1) the attorney made a reasonable inquiry into he facts supporting the document or pleading, (2) he or she made a reasonable inquiry into the law supporting that document to ensure that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (3) the attorney did not interpose the document for any improper purpose, such as to harass or to cause unnecessary delay or needles increase int he cost of litigation. *See also Miles* v. *Southern*, 297 Ark. 274, 760 S.W.2d 868 (1988); *Smith Intern, Inc.* v. *Texas Commerce Bank*, 844 F.2d 1193 (5th Cir. 1988); Wright & Miller, *Federal Practice and Procedure*: Civil 2d § 1335, p. 58 (1990); Note, *Rule 11 in the Federal Courts — Unanswered Questions in Arkansas*, 43 Ark. L. Rev. 847, 852 (1990). When a violation of Rule 11 occurs, the Rule makes sanctions mandatory. *Miles*, 297 Ark. 274, 760 S.W.2d 868: *Crookham* v. *Crookham*, 914 F.2d 1027 (8th Cir. 1990); *O'Connell* v. *Champion Intern. Corp.*, 812 F.2d 393 (8th Cir. 1987). Whether a violation occurred is a matter for the courts to determine, and this determination involves matters of judgment and degree, and in reviewing a trial court's Rule 11 determination, we do so under an abuse of discretion standard. *Miles* v. *Southerns*, 297 Ark. 280-A, 763 S.W. 656 (1988) (supplemental opinion denying rehearing); *Crookham*, 914 F.2d 1027; *O'Connell*, 812 F.2d 393.

■ Here, the taxpayer, Miller, obviously made reasonable inquiry into the law, but in arguing that law below and on appeal, the courts thoroughly disagree with his construction of the applicable constitutional and statutory provisions and the precedents interpreting them. He specifically asked that this court reject the *Caldarera* decision, among other reasons, as being

inconsistent with the purpose of Amendment 19; he certainly has a right to urge such a legal argument under Rule 11. Although we disagree with Miller's arguments in these respects, our rejection does not suggest he failed to make a reasonable inquiry into the facts and law in this case. On these facts, we cannot say the trial court abused its discretion in denying the state's motion for sanctions.

We affirm both on direct appeal and cross-appeal.