The Honorable Tim Wooldridge State Senator P.O. Box 339 Paragould, AR 72451
Dear Senator Wooldridge:
You have requested my opinion regarding a proposed change in the severance tax on natural gas.
Your questions are:
 (1) If the severance tax on natural gas is increased from the current rate of 3/10 of 1 cent per 1,000 cubic feet, to a higher rate per 1,000 cubic feet, with the producer still being required to collect a proportionate part of the tax out of the royalty paid to the landowner, would a simple majority vote be sufficient for the bill to pass? (This question assumes that the new tax rate will be imposed based on a rate per/MCF and not as a percentage of the selling price, as the tax was imposed in 1934.)
 (2) If the new tax is imposed based on a price per/MCF and the levy is changed so that: a) the tax is imposed solely on the producer, with the producer not being allowed to collect part of the tax from the landowner, or b) the tax is imposed solely on the producer and the producer is allowed to pass the tax upstream to the customer, would a simple majority vote be sufficient for the bill to pass?
RESPONSE
Question 1 — If the severance tax on natural gas is increased from thecurrent rate of 3/10 of 1 cent per 1,000 cubic feet, to a higher rate per1,000 cubic feet, with the producer still being required to collect aproportionate part of the tax out of the royalty paid to the landowner,would a simple majority vote be sufficient for the bill to pass? (Thisquestion assumes that the new tax rate will be imposed based on a rateper/MCF and not as a percentage of the selling price, as the tax wasimposed in 1934.)
It is my opinion that either a three-fourths vote of each house of the General Assembly or a popular vote of the electors would be necessary to enact the increase you have described. A simple majority vote would not suffice, in my opinion, to pass such an increase. I base this conclusion on the fact, explained more fully below, that the severance tax on natural gas was originally enacted in 1923 and was in effect at the time of the passage of Amendment 19 to the Arkansas Constitution (which added Article 5, § 38). Any changes in the severance tax are therefore subject, in my opinion, to the requirements of Amendment 19.
Amendment 19 added Article 5, § 38 to the Arkansas Constitution. That provision states:
 None of the rates for property, excise, privilege or personal taxes, now levied shall be increased by the General Assembly except after the approval of the qualified electors voting thereon at an election, or in case of emergency, by the votes of three-fourths of the members elected to each House of the General Assembly.
Ark. Const., Art. 5, § 38 (as added to the Constitution by Amendment 19) (emphasis added).
The Arkansas Supreme Court has held that the phrase "now levied," as used in Article 5, § 38, renders that provision inapplicable to any new tax imposed after the adoption of Amendment 19 in 1934. See Caldarera v.McCarroll, Commissioner of Revenue, 198 Ark. 584, 129 S.W.2d 615 (1939). A concurring opinion in Caldarera interpreted the phrase "now levied" to mean that a popular vote or legislative super majority is required only if a bill would effect an increase in a tax levied at the time of the adoption of Amendment 19. Caldarera, supra (Smith, J., concurring).
The Arkansas Supreme Court has maintained the interpretation enunciated in Caldarera, most recently addressing the issue of whether a tax was a new tax in Miller v. Leathers, 311 Ark. 372, 843 S.W.2d 850 (1992). In that case, the court cited Caldarera with approval and held that an increase in the sales tax could be effected by a simple majority vote because the gross receipts tax was originally imposed after the adoption of Amendment 19 and was not enumerated in Article 5, § 38 as a tax that could not be increased without a popular vote or legislative supermajority.
I have consistently interpreted Article 5, §§ 37 and 38 in a manner consistent with the Caldarera and Miller interpretation, as have my predecessors in office. See, e.g., Ops. Att'y Gen. Nos. 2003-123; 2003-109; 2002-102; 95-086; 91-012; 89-325; 88-325.
When I apply the principles enunciated in Caldarera and Miller to the increase you have described in the severance tax on natural gas, I must conclude that such an increase would be subject to the requirements of Article 5, § 38 of the Arkansas Constitution. In order to explain this conclusion, it is necessary to review the history of the severance tax on natural gas in Arkansas.
The severance tax on natural gas was originally established in Arkansas by Act 118 of 1923. That act levied the severance tax on natural gas at a rate of "two and one-half percent of the gross cash market value of the total production[.]" The tax was collected and reported by the severer or producer. In addition, the act required the severer or producer to withhold out of the proceeds of the sale of the natural resource a proportionate part of the total tax due from the owners of the natural resource. With regard to natural gas, this requirement included the deduction of tax from any royalty payment due the landowner.
In 1934 at the time of the adoption of Amendment 19 to the Arkansas Constitution (which added Article 5, § 38), Act 118 of 1923 was still in effect and the severance tax was still collected and paid as described above. In 1947, the severance tax on natural gas was changed to calculate the tax on the basis of three twentieths of 1 cent per 1,000 cubic feet, rather than on the basis of a percentage of the selling price. This change occurred pursuant to Act 136 of 1947. That act repealedAct 118 of 1923, enacted another severance tax, and changed the manner in which the tax was to be calculated. The act retained the requirement of withholding proportionate amounts due from the owners of the natural resource, and of deducting taxes from royalty payments due the landowner. Although Act 136 of 1947 has been amended over the years, its severance tax remains in effect today (and as explained below, it is my opinion that this is the same severance tax as that which was imposed byAct 118 of 1923).
It is my opinion that although Act 136 of 1947 repealed Act 118 of 1923
and its particular manner of calculating the severance tax, this repeal did not have the effect of rendering the new version of the severance tax a "new" tax, or a tax that was not levied at the time of the passage of Amendment 19. Act 136 of 1947 enacted a severance tax that was described in language almost identical to the language by which Act 118 of 1923 had described its severance tax. The severance tax of 1947 was simply calculated in a different manner than the severance tax of 1923. Moreover, not only is the description of the tax imposed byAct 136 of 1947 almost identical to the description of the tax imposed byAct 118 of 1923, but the ultimate tax burden under the two acts falls upon the same taxpayers (the producers, with identical withholding rights). This factor is significant to an Amendment 19 analysis. In determining that the tax that was in question in Caldarera was a new tax, the court placed particular emphasis on the fact that the tax burden under the old act and the new act fell upon two completely different classes of taxpayers. I believe that if faced with the question, the court would employ similar reasoning to determine that an identically described tax upon the same class of taxpayers with the same withholding rights is not a new tax, even though it is calculated differently. For this reason, I believe that the court would find that the actual effect of Act 136 of 1947 was to retain the severance tax that had been created in 1923, but to change only its manner of calculation.
Therefore, I conclude that the current severance tax on natural gas was in effect in 1934 at the time of the passage of Amendment 19, even though it is now calculated in a different manner than it was calculated at that time, and is therefore subject to the requirements of Article 5, § 38. Accordingly, any increase in that tax will require either a three-fourths majority vote in each house of the General Assembly, or a popular vote of the electorate.
Question 2 — If the new tax is imposed based on a price per/MCF and thelevy is changed so that: a) the tax is imposed solely on the producer,with the producer not being allowed to collect part of the tax from thelandowner, or b) the tax is imposed solely on the producer and theproducer is allowed to pass the tax upstream to the customer, would asimple majority vote be sufficient for the bill to pass?
It is difficult for me to analyze the scenarios you have described in the abstract. In order for me to accurately analyze whether these described changes would impact the applicability of Article 5, § 38 of the Arkansas Constitution, it would be necessary for me to know more facts about the other provisions of the legislative measure imposing the tax. Nevertheless, I can state as a general matter that neither of the scenarios you have described would appear on the surface to impact my conclusion that the proposed change in the severance tax is subject to the requirements of Article 5, § 38 of the Arkansas Constitution, and that a three-fourths majority vote or a popular vote of the electorate is required. I base this conclusion on the fact that both scenarios seem to envision that the ultimate tax burden would rest upon the producer. Because this is the case under both Act 118 of 1923 and Act 136 of 1947, your described scenarios do not appear to support the conclusion that the proposal would constitute a new tax that was not levied at the time of the passage of Amendment 19. Although both Act 118 of 1923 and Act 136 of 1947
require that the tax burden be shared among the producers, landowners, and royalty owners, the ultimate burden is actually upon the producer, because both acts provide for enforcement by execution against the producer only. They make no provision for prosecution of landowners or royalty owners. Moreover, under both acts, the producer is charged with the responsibility of tendering payment of the tax. In this regard, I point out that even though the tax under consideration in Caldarera, which was imposed in the first instance upon retailers, could have been passed on by the retailers to the consumers, the court specifically noted that regardless of whether the retailers did in fact pass on the tax or absorb it themselves, they were ultimately responsible for paying it. These factors lead me to conclude that under both Act 118 of 1923 andAct 136 of 1947, the producer bears the ultimate tax burden. Because the scenarios you have described do not appear (at least on the surface) to change this situation, I cannot conclude, without more information, that these scenarios would render Article 5, § 38 inapplicable.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General