IN THE MATTER OF A. AND B. ATTORNEYS-AT-LAW.

Argued December 15, 1964—Decided April 12, 1965.

*Mr. H. Russell Morss, Jr.,* for the order.

*Mr. Grover C. Richman, Jr.,* for respondents.

The opinion of the court was delivered
PER CURIAM. A complaint was filed with the County
Ethics Committee charging respondents with violation of

*Canon* 6 of the *Canons of Professional Ethics* in that while serving as municipal attorneys, they also were attorneys for and served conflicting interests of certain land and building developers whose projects were located in the same municipality. The Committee did not make a presentment but at our request filed a report. We issued an order to show cause.

Although the testimony in some respects is not free from doubt, we cannot say that it clearly and convincingly demonstrates that respondents did represent the developers in their dealings or transactions with the municipality, and hence it cannot be said that there was a literal violation of *Canon* 6, which reads in part:

"It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose."

Dual representation is particularly troublesome where one of the clients is a governmental body. So, an attorney may not represent both a governmental body and a private client merely because disclosure was made and they are agreeable that he represent both interests. As Mr. Justice Hall said in *Ahto v. Weaver*, 39 *N. J.* 418, 431 (1963), "Where the public interest is involved, he may not represent conflicting interests even with consent of all concerned. *Drinker, Legal Ethics*, 120 (1953); *American Bar Association, Opinions of the Committee on Professional Ethics and Grievances* 89, 183 (1957)."[1] Mr. Chief Justice Weintraub in a "Notice to the Bar," 86 *N. J. L. J.* 713 (1963), stated:

---

[1] The conduct here involved antedated *Ahto v. Weaver*.

"Because of some matters called to its attention, the Supreme Court wishes to publicize its view of the responsibility of a member of the Bar when he is attorney for a municipality or other public agency and also represents private clients whose interests come before or are affected by it. In such circumstances the Supreme Court considers that the attorney has the affirmative ethical responsibility immediately and fully to disclose his conflict of interest, to withdraw completely from representing both the municipality or agency and the private client *with respect to such matter*, and to recommend to the municipality or agency that it retain independent counsel. Where the public interest is involved, disclosure alone is not sufficient since the attorney may not represent conflicting interests even with the consent of all concerned." (Emphasis added)

 Here, as we have said, we do not find the respondents represented the developers in the developers' dealings with the municipality. Although for this reason there is no literal violation of *Canon* 6, nonetheless that canon does not exhaust the ethical responsibility of the bar in this area. It is fundamental that no attorney who holds a public office should suffer anyone to attempt to gain an advantage by virtue of his official status, and hence it would be improper for an attorney so situated to accept a retainer if he is aware that the prospective client has that objective in mind.

We do not suggest that the members of the bar must receive a prospective client with unbecoming suspicion, nor of course do we suggest that an attorney for a municipality may not represent individuals or interests located therein merely because it may come to pass that the private client will have some transaction with the municipality.

██ Nonetheless the subject of land development is one in which the likelihood of transactions with a municipality and the room for public misunderstanding are so great that a member of the bar should not represent a developer operating in a municipality in which the member of the bar is the municipal attorney or the holder of any other municipal office of apparent influence. We all know from practical experience that the very nature of the work of the developer involves a probability of some municipal action, such as zoning applica-

tions, land subdivisions, building permits, compliance with the building code, etc.

It is accordingly our view that such dual representation is forbidden even though the attorney does not advise either the municipality or the private client with respect to matters concerning them. The fact of such dual representation itself is contrary to the public interest.

We of course appreciate that the dual representation here involved has not been uncommon. For that reason it would be unfair to adjudge guilt in this, the first proceeding raising the issue before the Court. For that reason no such action will be taken in this matter, and the names of the attorneys concerned will be omitted from the caption.

The order is discharged.

SCHETTINO, J. (concurring). I join in the majority opinion but I express additional views herein.

Respondents concede that they were municipal attorneys while also attorneys for the land and building developers in that municipality. The issue is whether such dual representation *per se* violates *Canon* 6.

We note that *Canon* 6 forbids the representation of conflicting interests "except by express consent of all concerned given [by each client] after a full disclosure of the facts." This proviso does not sanction dual representation; it forbids it *except* in certain cases. See *Drinker, Legal Ethics*, 120 (1953). But this escape hatch is not available to an attorney representing a municipality and a private client. See *Ahto v. Weaver*, 39 *N. J.* 418, 431 (1963). Mr. Chief Justice Weintraub in a "Notice To The Bar," 86 *N. J. L. J.* 713 (1963), referred to the duty of such municipal attorney "fully to disclose his conflict of interest, to withdraw completely from representing both the municipality or agency and the private client *with respect to such matter*, and to recommend to the municipality or agency that it retain independent counsel." (Emphasis added)

I emphasize the prohibition of any representation "with respect to such matter." There is no intent to prohibit general representation of private clients in their private dealings or dealings with other municipalities. Municipal attorneys may in their private capacities represent clients who live in the same municipality. It is readily conceivable that any one of the private clients would, over the years, have one or more contacts with the municipality. It would be unfair to bar the general representation of such a private client (except in any case involving his municipality) just because the attorney happened to be the municipal attorney.

But should such general representation be permitted in cases where the private client is a land or building developer in that municipality? Because of political fears or because of a desire for favored treatment—real or fanciful—some developers seek out the municipal attorney. Perhaps experience in other municipalities has made a developer "practical" as well as conscious of human failings. He knows that if he is represented by the municipal attorney, he will get expeditious if not favored treatment on his numerous requests for municipal actions. The developer's fears or desires are not justifiable bases for selecting a municipal attorney as the developer's attorney.

A land and building development has widespread ramifications in a municipality, not the least of which are the required dealings with the various municipal agencies and departments. Even though the municipal attorney may not actively represent the developer in matters affecting the municipality (as respondents here claim), other municipal officials and employees will of necessity know of the representation. Such a situation probably results in a Pandora's box of psychological and legal entanglements involving other public officials as well as the municipal attorney.

· I agree with the majority that the Court cannot countenance such dual representation for it violates *Canon* 6.

Compare *Virginia Construction Corp. v. Fairman*, 39 *N. J.* 61, 64–5 (1962), wherein we referred to the employment by

a real estate developer of a part-time township engineer as not "uncommon in the past" but added that "it gives rise to highly offensive conflicts of interest and should not be tolerated hereafter by municipalities." I find the mixed relationship of attorney-municipality-developer no less obnoxious and abhorrent.

Moreover, as pointed out in *New Jersey Advisory Committee on Professional Ethics, Opinion* 69, 88 *N. J. L. J.* 97, 103 (1965):

"The relationship between the municipality and the developer where the interpretation and enforcement of so many statutes, ordinances, rules and regulations are brought into play, is indeed a fertile field for conflicting interests, and when the public is involved the municipal attorney must avoid any semblance of divided loyalty. The public image of the legal profession as a whole would be detrimentally affected if such a practice, as here proposed, were permitted. And this is so although the lawyer may be guided by the purest of altruistic intentions because it is the suspicion engendered in the mind of the public by such conduct that creates the mischief. See N. J. Advisory Committee on Professional Ethics, *Opinion* 8, 86 *N. J. L. J.* 718 (1963), and *Opinion* 54, 87 *N. J. L. J.* 689 (1964)."

I agree. No attorney can, with propriety, extricate himself in such situations. Public officials are obligated to perform their duties not only with honesty, faithfulness and ability but also with exclusive fidelity. By so doing, an attorney not only will avoid all impropriety, but will avoid appearance of impropriety. Nor should such an attorney even inferentially create a public image that he is utilizing his public position to advance his professional success or personal interests at the expense of the public.

I agree with the majority that as this is the first time the Court has dealt with this relationship, it should withhold any form of discipline. But, in the future any attorney found guilty of entering into such an arrangement should be disciplined. Moreover, as the Court's opinion here is in the nature of an advisory one, I would, as to any attorney presently in such a situation, require him, within a reasonable time hereafter, to free himself of such entanglements.

JACOBS, J., concurs in result.

*For discharge of order* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*Opposed*—Justice HALL—1.