CITY OF LITTLE ROCK, Arkansas *v.* Ann CASH,
T. SMITH, C. S. ROBINSON, Wilson WEBBER, Charles
WATSON and G. JOHNSON

82-143                                      644 S.W.2d 229

Supreme Court of Arkansas
Opinion delivered December 6, 1982
[Rehearing denied January 17, 1983.]

*R. Jack Magruder, III,* City Atty., and *Wright, Lindsey & Jennings,* by: *Patrick J. Goss,* for appellant and cross-appellee.

*Henry & Duckett,* by: *David P. Henry,* for appellees and cross-appellants.

ROBERT H. DUDLEY, Justice. This interesting case presents many questions about illegal exactions and an attorney's conflict of interests.

Ark. Stat. Ann. § 19-4201 through 19-4218 (Repl. 1980) authorized cities to purchase or construct waterworks sys-

tems. In 1937 Ark. Stat. Ann. § 19-4219 (Repl. 1980) was enacted which authorized first and second class cities to create commissions to operate and manage their waterworks systems. That same year the City of Little Rock by ordinance created the Little Rock Waterworks Commission which operates and manages the system. The Board of Directors of the City, pursuant to § 19-4208, retained the authority to sell and encumber the property as well as to set rates. The same statute, § 19-4208, provides that the operating authority can pay surplus funds over to the city only after taking into account the cost of operations and maintenance, allowing for replacement costs and depreciation, providing for interest redemption and purchasing all outstanding bonds.

In 1965, the General Assembly, by Act 50, gave to the operating authority of any waterworks system the discretion to make voluntary contributions to the general fund of the municipality in lieu of taxes in return for police, fire and health protection. Ark. Stat. Ann. §§ 19-4273 through 19-4276 (Repl. 1980). The municipality cannot force payments to be made to it pursuant to this statute as the payments in lieu of taxes are discretionary with the operating authority.

In October, 1969, the City of Little Rock, by ordinance, levied a privilege tax on the waterworks commission. The tax was in the amount of $10,417 for the period of December 1, 1969 through December 31, 1969, and $125,000 for the year 1970. The ordinance contains the following provisions:

> SECTION 3. The taxes hereby levied shall be paid in addition to any sums paid by the Little Rock Municipal Water Works under the provisions of Act 50 of 1965.
>
> SECTION 4. The Little Rock Municipal Water Works is hereby authorized to pass on said taxes by levying an additional charge of twenty-five cents (25¢) a month per meter upon resident consumers. The Water Works may terminate the services of any consumer who fails to pay such charge when due.

An identical ordinance was passed for the years 1971,

1972 and 1973. Beginning in 1973, the ordinances authorized the waterworks to levy a charge in the amount necessary to collect the amount of the tax, which was $167,652 in 1974; $144,000 in 1975; $145,000 in 1976; $146,500 in 1977; $148,500 in 1978; $156,822 in 1979; $322,500 in 1980; $339,066 in 1981 and $340,000 in 1982. The taxes have been paid to the city on a monthly basis at the rate of 1/12th of the yearly levy.

On August 25, 1981, six residents of the city who were water users filed suit in the chancery court against the City of Little Rock alleging that the privilege tax was an illegal exaction prohibited by Article 16, § 13 of the Arkansas Constitution. The six taxpayers were represented by David Henry, a former assistant city attorney, who, at the time he filed this suit against the city, also was defending the city in another case for a fee. The city filed a motion asking that David Henry be disqualified because of his conflict of interests. The trial court refused to disqualify the attorney, found an illegal exaction, gave judgment against the city in the amount of $1,264,761.30 through March, 1982, plus interest at the rate of ten percent per annum until paid, and awarded David Henry an attorney's fee in the amount of $316,190.00. We affirm the holding that the privilege tax is an illegal exaction, modify the amount of the judgment and disallow the attorney's fee.

*The illegal exaction.* Municipalities have only those powers that have been delegated to them by statutes or by the Constitution, and any substantial doubt about the existence of a power in a municipal corporation must be resolved against it. *Town of Dyess* v. *Williams,* 247 Ark. 155, 444 S.W.2d 701 (1969), citing *City of Little Rock* v. *Raines,* 241 Ark. 1071, 411 S.W.2d 486 (1967) and *Yancey* v. *City of Searcy,* 213 Ark. 673, 212 S.W.2d 546 (1948). A city tax which is not authorized by a delegated power of taxation is an illegal exaction. *Schuman* v. *Ouachita County,* 218 Ark. 46, 234 S.W.2d 42 (1950), citing *Waters Pierce Oil Co.* v. *Little Rock,* 39 Ark. 412 (1882).

Appellant city tacitly concedes that there is no constitutional or statutory authority delegating to it the authority

to levy this privilege tax. However, it argues that, although its ordinance labeled the assessment a privilege tax, it is not really a tax. It contends that the terms franchise fee, franchise tax, rate, assessments, charges, privilege tax and privilege fee are interchangeable, and the use of one term instead of another does not necessarily invalidate a legislative enactment. *See Eaton* v. *McCuen,* 273 Ark. 154, 617 S.W.2d 341 (1981); *Holman* v. *City of Dierks,* 217 Ark. 677, 233 S.W.2d 392 (1950). The city then inductively reasons that the assessment or charge or rate imposed by the ordinances should be treated as a part of the rate for water validly set by the municipality pursuant to § 19-4208.

The appellant's argument fails for a number of reasons. First, the assessment obviously is not a charge for services rendered to the waterworks. Those services are paid for in lieu of taxes pursuant to statutes, §§ 19-4274 and 19-4275, and are discretionary with the operating authority. Conversely, the tax before us is mandatory, in a set amount, and the ordinances provide that "the taxes hereby levied shall be paid in addition to any sums paid by the Little Rock Municipal Waterworks under the provisions of Act 50 of 1965." Second, all other payments by the waterworks to the municipality which come from water rates must come from surplus accumulated in the operation fund only after taking into account the cost of operations and maintenance, allowing for replacement costs and depreciation, providing for interest redemption and the purchasing of all outstanding bonds. § 19-4208. Here the tax, originally at 25 cents per meter, was levied on the waterworks and passed on to the customer and then paid by the customer and passed directly back to the city without regard to the cost of operations, maintenance, depreciation and debt as set out above. Thus, it was not a part of the water rate. Third, the assessment was designated a privilege tax by the ordinances. It was clearly a tax, an unauthorized tax, and therefore an illegal exaction. We affirm the chancellor in so holding.

Contrary to appellant's argument, Section 9 of Act 23 of the 1981 Extraordinary Session of the General Assembly does not authorize the imposition of the privilege tax

challenged in this case. We affirm the chancellor's granting of injunctive relief.

*The amount of the illegal exaction to be recovered.* The appellees argue, on cross-appeal, that no statute of limitations should have been applied and that they should be allowed to recover all money illegally exacted, over $2,000,000. The appellant contends the following in the alternative: that no refund is due, that the three year statute of limitations applies, or that the five year limitation should be applied and the recovery should be limited accordingly.

We do not find it necessary to decide the issues concerning statutes of limitation because we have always followed the common law rule prohibiting the recovery of voluntarily paid taxes. *See, e.g., Searcy County* v. *Stephenson,* 244 Ark. 54, 424 S.W.2d 369 (1968); *Thompson, Comm'r.* v. *Continental Southern Lines, Inc.,* 222 Ark. 108, 257 SW.2d 375 (1953).

In *Thompson, supra,* this Court stated the general rule as follows:

> Appellee seeks to recover voluntary payments made of taxes. This can not be done. Cooley in *The Law of Taxation,* Ch. 20, § 1282, gives this rule: "It is well settled that if the payment of a tax is a voluntary payment, it cannot be recovered back, except where a recovery is authorized by the provisions of a governing statute regardless of whether the payment is voluntary or compulsory." (Vol. 3 at p. 2561); and further: "Where voluntary payments are not recoverable, it is immaterial that the tax or assessment has been illegally laid, or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law, and is of general application. Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the State should furnish him with legal remedies to recover it back. Ignorance or mistake of law by one who voluntarily pays a tax

illegally assessed furnishes no ground of recovery."
(Vol. 3 at page 2564).

This Court, one paragraph later, noted that Arkansas had no
statute on the subject and that we follow the common law
rule:

> In *Brunson* v. *Board of Directors of Crawford
> County Levee Dist.*, 104 Ark. 24, 153 S.W. 828, 829, 44
> L.R.A., N.S., 293, Mr. Justice Hart, speaking for the
> Court, said: "In some of the states the right to recover
> illegal taxes paid under protest is given by statute. In
> this state, however, there is no statute regulating the
> matter, and if any recovery is had it must be under the
> rules of the common law. The common-law rule
> governing cases of this kind is laid down in the
> following cases: *Lamborn* v. *County Commissioners,*
> 97 U.S. 181, 24 L.Ed. 926; *Union Pacific R. R. Co.* v.
> *Dodge County,* 98 U.S. 541, 25 L.Ed. 196. These cases
> lay down the following rule: 'Where a party pays an
> illegal demand, with full knowledge of all the facts
> which render such demand illegal, without an im-
> mediate and urgent necessity therefor, or unless to
> release (not to avoid) his person or property from
> detention, or to prevent an immediate seizure of his
> person or property, such payment must be deemed
> voluntary, and cannot be recovered back. And the fact
> that the party, at the time of making the payment, files
> a written protest, does not make the payment invol-
> untary.' "

*Id.* at 115, 257 S.W.2d at 379.

Appellees contend that the common law rule prohibit-
ing the recovery of voluntarily paid taxes has never been
applied to an illegal exaction. While no case has specifically
stated that the common law rule is applicable to recoveries
pursuant to Article 16, § 13, the language quoted above
clearly encompasses an illegal exaction under the consti-
tutional provision. In addition, several of our cases have
applied the common law rule to unconstitutional and
illegal taxes rather than just to taxes illegally assessed or

collected. *See, e.g., Gates v. Bank of Commerce & Trust Co.,* 185 Ark. 502, 47 S.W.2d 806 (1931). Thus, the common law rule prohibiting the recovery of voluntarily paid taxes is applicable to illegal exactions which violate Article 16, § 13 of the Arkansas Constitution.

The trial judge was aware of this common law rule but held that the payments made under the challenged ordinances were not voluntary because the ordinances provided that the waterworks could discontinue the water service of any customer who failed to pay the tax. For example, the 1970 ordinance provided:

> The Little Rock Municipal Water Works is hereby authorized to pass on said taxes by levying an additional charge of twenty-five cents (25¢) a month per meter upon resident consumers. The Water Works may terminate the services of any consumer who fails to pay such charge when due.

The case of *Chapman & Dewey Land Co. v. Board of Directors St. Francis Levee District,* 172 Ark. 414, 288 S.W. 910 (1926) is dispositive on the voluntariness issue. A part of that opinion is as follows:

> Under these decisions, the coercion which will render a payment of taxes involuntary must consist of some actual or threatened exercise of power possessed by the party exacting or receiving payment over the person or property, from which the latter has no reasonable means of immediate relief, except by making payment.
>
> But it is insisted by counsel for the plaintiff that the taxes alleged in the complaint takes the case at bar out of the operation of the principle decided in these cases and brings it within the rule announced in *Dickinson v. Housley,* 130 Ark. 259, 197 S.W. 25. We do not think so. In that case the collector refused to accept any sum less than the full amount demanded, and had the power to have sold the lands of the taxpayer in payment of the illegal tax. This would have constituted a cloud upon the title, and it became necessary for the

owner to pay the illegal demand in order to prevent the sale. No such power existed in the board in the case at bar. If the plaintiff had refused to pay the taxes, the board of directors would have been compelled to institute proceedings against the landowner in the chancery court to collect the taxes, and the plaintiff could have presented the same matters as are set up in this case to defeat the collection of the taxes. In short, it could have defended a suit to collect the taxes upon the same ground that it bases its right to recover the taxes which it voluntarily paid.

*Id.* at 416, 288 S.W. at 911.

Likewise, the City of Little Rock, the party receiving payment, had no power to have the services of any consumer terminated. That discretionary power was given to the Little Rock Municipal Waterworks and, in turn, it never adopted any policy to terminate service to a customer who refused to pay the tax. Significantly, not one person testified that he or she in fact paid the tax because of coercion. Thus, we hold that the chancellor erred in failing to apply the common law rule prohibiting the recovery of voluntarily paid taxes. The taxes were involuntarily paid only after the date this suit was filed, August 25, 1981. All taxpayers, not just the six named plaintiffs, will be deemed to have paid their taxes involuntarily from the date of the complaint because all taxpayers, not just the named plaintiffs, are the real parties in this action. *McCarroll* v. *Farrar*, 199 Ark. 320, 134 S.W.2d 561 (1939).

The chancellor enjoined the appellant from assessing and collecting the privilege taxes before us, but then stayed the decree. As a result, the collection of these taxes has continued during the pendency of this appeal. We hold that all privilege taxes collected pursuant to the unconstitutional ordinances from the date of the filing of the complaint must be refunded, less reasonable costs of administration.

*The attorney's conflict of interests.* Appellant contends that the trial court erred in refusing to disqualify appellees'

attorney. We agree, but reversal is not the proper remedy in this case.

In its motion to disqualify appellees' attorney the appellant pleaded as follows:

> Plaintiffs' Counsel, David P. Henry, has filed this cause challenging a series of ordinances enacted by the City of Little Rock in 1969 and each year thereafter.
>
> Said Counsel was employed by the City of Little Rock as an Assistant City Attorney, beginning on or about September 6, 1971, with said employment continuing until August 11, 1978. Further, said Counsel has represented the City of Little Rock since that time on other matters and remains the attorney of record for the City in the case of *Phillips* v. *Weeks* before Judge Eisele.

The appellant proved that appellees' attorney had adverse interests as he was representing the city at the same time he was suing the city. The pertinent testimony, taken prior to trial on the appellant's motion to have appellees' attorney disqualified, is as follows:

Q. [Mr. Magruder, City Attorney]
Do you deny that you are currently the attorney of record in the *Phillips* v. *Weeks* lawsuit?
A. [Mr. Henry, Appellees' Attorney]
No.
Q. Do you deny that the lawsuit is still pending, even though it's been submitted back to the Court?
A. It's not pending from the standpoint of anything to be done by the attorneys of record.
Q. That's my point. It is, nevertheless, still pending, is it not?
A. Well, I have trouble with such a narrow —
Q. (Interposing) Let me see if I can confine that a little bit more for you. Would you identify this as Defendant's Exhibit Number Two?
A. (Witness continuing) I can respond to your question, but I can't do it with a yes or a no.
Q. Let me show you what has been identified as

Defendant's Exhibit Two and purports to be a certified copy from the United States District Clerk stating that the case is pending and you are the attorney of record. Would you disagree with that?

A. I don't know what the U.S. District Clerk knows about the case or what his certification has to do with it. In my opinion, most or ninety-nine percent of the issues in that case has been resolved, and there is one unresolved issue pertaining to the police department practice of holding people under investigation.

Q. That issue is unresolved?

A. That one issue. To me, the case of *Phillips* v. *Weeks* is a dead horse. Now, I wouldn't call that pending.

Mr. Magruder. Your Honor, I would offer at this point for Defendant's Exhibit Two the certified copy from the U.S. District Court Clerk,

The Court. It'll go in without objection.

\*　\*　\*

Q. [Mr. Magruder cont.) Let me show you what has been identified as Defendant's Exhibit Four which purports to be a series of statements or bills sent by the firm of Henry and Duckett to the City of Little Rock on the *Phillips* v. *Weeks,* and I ask if you recognize those.

A. I recognize them, but one doesn't have anything to do with *Phillips* v. *Weeks.* Two of them don't.

\*　\*　\*

Mr. Magruder. To make the record clear, Your Honor, I'd like of offer Defendant's Ten, which is a copy of the Resolution by the City Board directing my office to pursue the disqualification of Mr. Henry.

Though we do not question the good faith of the attorney, both the conflict of interest and the appearance of it are too strong to ignore. The representation of conflicting or adverse interests will most often constitute professional misconduct. A lawyer is charged with a high degree of loyalty to his client. Suing and defending the same client at the same time is, at the very best, unseemly in that regard.

The law holds an attorney to a high standard of professional conduct which includes the obligation to avoid even the appearance of impropriety. Code of Professional Responsibility Canon 9. Certainly, the attorney has not succeeded in avoiding such an appearance in the instant case.

Mr. Henry testified that the city attorney had assured him that the case of *Phillips* v. *Weeks* would never serve as the basis for a motion to disqualify. However, the City, by formal resolution of its Board of Directors on September 1, 1981, authorized the city attorney to move for disqualification. Even though the city attorney may have assured appellees' attorney that conflicting representation would not be a basis for disqualification, it was a vain and useless act. The Supreme Court of New Jersey aptly and adroitly addressed the issue as follows:

> Dual representation is particularly troublesome where one of the clients is a governmental body. So, an attorney may not represent both a governmental body and a private client merely because disclosure was made and they are agreeable that he represent both interests. As Mr. Justice Hall said in *Ahto* v. *Weaver*, 39 N.J. 418, 431, 189 A.2d 27, 34 (1963), "Where the public interest is involved, he may not represent conflicting interests even with consent of all concerned. Drinker, Legal Ethics, 120 (1953); American Bar Association, Opinions of the Committee on Professional Ethics and Grievances 89, 183 (1957)." Mr. Chief Justice Weintraub in a "Notice to the Bar," 86 N.J.L.J. 713 (1963), stated:
>
>> "Because of some matters called to its attention, the Supreme Court wishes to publicize its view of the responsibility of a member of the Bar when he is attorney for a municipality or other public agency and also represents private clients whose interests come before or are affected by it. In such circumstances the Supreme Court considers that the attorney has the affirmative ethical responsibility immediately and fully to disclose his conflict of interest, to withdraw completely from representing both the municipality or agency and

the private client *with respect to such matter,* and to recommend to the municipality or agency that it retain independent counsel. Where the public interest is involved, disclosure alone is not sufficient since the attorney may not represent conflicting interests even with the consent of all concerned. (Emphasis added.)

*Re A. and B.,* 44 N.J. 331, 209 A.2d 101, 102-03, 17 ALR 3d 827 (1965).

The trial court was clearly in error in refusing to disqualify appellees' attorney, but we do not consider reversal to be the proper remedy in this particular case. However, we rannot allow the attorney to profit from the impropriety. Accordingly, we refuse to approve an attorney's fee, although an award of attorney's fees in tax refund cases is authorized by Ark. Stat. Ann. § 84-4601 (Repl. 1980).

*Other issues.* Appellant city asserts a number of other points and asks reversal on each of them. While we agree that the trial court committed other errors, they are not prejudicial errors and do not require reversal.

The appellant contends that the trial court erred in refusing to require appellees to comply with ARCP Rule 23, the class action rule. We agree. Appellees were not seeking just the return of their property which had been illegally exacted, but instead in their complaint asked for over $2,000,000, attorney's fees and a permanent injunction against the tax. Rule 23 does not conflict with the constitutional provision: it serves as a rule of procedure in a class action case of this nature. As stated by Garner, Sloan and Haley in *Taxpayers Suits to Prevent Illegal Exactions in Arkansas,* 8 Ark.L.Rev. 129 (1954) at 135:

Unlike certain other provisions in the Arkansas Constitution, Article XVI, Section 13 is self-executing. But even though no legislative declaration is required for its efficacy, there is authority to the effect that the legislature may regulate the procedure so long as the Constitutional guarantee is not abridged. Certainly it is agreed that the statute of limitations applies to actions under this provision, just as in any other

litigious circumstance. But equally certainly any statute that conflicts with, or restricts the scope of, this provision is void . . . . [footnotes omitted.]

The trial judge should have made the appellees comply with Rule 23, but there is no prejudice. Our common law makes the type of action a class action and requires a complete adjudication of a fully adversary case. In *McCarroll* v. *Farrar,* 199 Ark. 320, 134 S.W.2d 561 (1939), this Court quoted from *Rigsby* v. *Ruraldale Consolidated School District No. 64,* 180 Ark. 122, 20 S.W.2d 624 (1929) as follows:

> Where a citizen and taxpayer brings an action in behalf of himself and other taxpayers against a municipality every citizen is regarded as a party to the proceedings, and is bound by the judgment entered therein. In such cases the people are regarded as the real parties. For example the judgment in a suit brought by taxpayers of a town against the town and a railroad company, to enjoin the issue by the town of bonds to the company, by which it is adjudged that such bonds should issue, is binding on all the other taxpayers of the town, though not parties to the suit, and the questions involved therein are res judicata in a second suit by another taxpayer to restrain the payment of interest on the bonds. In all such cases, however, the first judgment must be bona fide.

Here there was a final adjudication of a fully developed adversary case. As a matter of law this was a class action. Thus no prejudice has been suffered by appellant as a result of the ruling.

The chancellor also erred in not requiring that the Attorney General be served with notice of the proceeding and be given an opportunity to be heard as required by Ark. Stat. Ann. § 34-2510. *See, e.g., Roberts, County Judge* v. *Watts, County Clerk,* 263 Ark. 822, 568 S.W.2d 1 (1978). Appellees argue that § 34-2510 is not applicable to this case because this is not a declaratory judgment action but rather is simply a suit pursuant to a self-executing constitutional provision to recover illegally exacted money. That argument overlooks the fact that this is a class action seeking to

declare thirteen past and present ordinances invalid and seeking a permanent injunction against future collections of the privilege tax. Since the statute requires service on the Attorney General but does not require him to appear or to be made a party, the requirement of service is not jurisdictional. Therefore, even though noncompliance with the notice requirement is generally reversible error, reversal is not mandated by the statute. The purpose of the notice requirement is to prevent an ordinance or statute from being declared unconstitutional in a proceeding which might not be a fully adversary and complete adjudication. Frequently, the Attorney General chooses not to appear in cases of this nature. In this particular case the attorneys for the City of Little Rock prepared exhaustive briefs in both the trial and appellate courts and our own research fails to disclose any points not argued. Thus we find no prejudice to appellant as a result of this error. This holding is limited to the facts of this particular case.

The appellant similarly contends that the trial court erred procedurally in not requiring that the operating authority and its commissioners be made parties pursuant to Ark. Stat. Ann. § 34-2510. The ordinances levied the tax against the waterworks and technically it is a necessary party. However, the same ordinance passed on the tax to the consumer and thus the waterworks was merely a conduit for the City of Little Rock. As a result, the matter is one of form and not substance. Hence, there is no prejudice to any of the parties and we do not reverse on this point.

This case comes to us on appeal from chancery court. On appeal we hear equity cases de novo on the record made below and will generally attempt to resolve all issues and dispose of them. *Ferguson* v. *Green,* 266 Ark. 556, 587 S.W.2d 18 (1979). The appellate court may always enter such judgment as the chancery court should have entered upon the undisputed facts in the record. *Larey, Comm'r.* v. *Continental Southern Lines,* 243 Ark. 278, 419 S.W.2d 610 (1967). The illegal taxes are still being collected and that ought to be stopped. In addition, we are satisfied that, as a practical matter, it would be a waste of judicial resources to reverse and remand on the basis of the errors discussed above. This case has been extensively litigated and, because rec-

tifying these procedural matters would not affect the outcome on the merits, no purpose would be served by a reversal.

Appellant contends that no refund may be had because Article 16, § 13 of the Arkansas Constitution provides only for injunctive relief. The constitutional provision has not been so narrowly construed. As correctly and concisely stated in 8 Ark.L.Rev. 129 at 133, *supra*:

> Injunctive relief is by far the most frequent remedy sought by complainants when suing under the authority of Article XVI, Section 13; but it is not the only remedy. Suits have been brought, and allowed, to cancel a deed; to recover sums of money; to have an ordinance declared void; to set aside a default judgment; to appeal a quorum court action; to have an accounting of taxes collected but not accounted for; and so forth. Also it has been held that mandamus lies at the instance of a taxpayer to compel officers to comply with an initiated act fixing their salaries and compensation. [Footnotes omitted.]

Appellant also contends that the chancellor erred in awarding post-judgment interest. We find no error. The award of post-judgment interest was correct. Ark. Stat. Ann. § 29-124 (Repl. 1979) provides that judgments shall bear interest at the rate of 10 percent per annum. In applying this statute, this Court in *Shofner, Administrator* v. *Jones,* 201 Ark. 540, 145 S.W.2d 350 (1940), stated:

> The legislative intent seems to have been that all judgments should bear interest except those expressly excluded; and since claims against estates when converted into judgments are not excepted, the rule *inclusio unius est exlusio alterius* applies. . . .

Since judgments against municipalities are not excluded in Ark. Stat. Ann. § 29-124, the holding requires that the judgment entered bear interest until paid at the rate of 10 percent per annum.

The appellant is correct in its contention that the full amount of the refund should not be awarded personally to

appellees. As we stated in *Laman* v. *Moore,* 193 Ark. 446, 100 S.W.2d 971 (1937): "Neither the original plaintiff nor the intervenor could recover a personal judgment against any of the appellees except for the benefit of all taxpayers of the City." The appellees are appearing as representatives of a class. Accordingly, the judgment must be modified to reflect that the refund is for the benefit of all taxpayers.

Numerous other points are raised but we do not consider it necessary to decide them because of the disposition of the case.

The appellant did not designate as a point of appeal the system of refunding which was ordered by the trial court.

The case is affirmed in part, modified in part and remanded to the trial court for refund proceedings which shall be consistent with this opinion.

ADKISSON, C.J., and PURTLE, J., dissent.

HAYS, J., not participating.

RICHARD B. ADKISSON, Chief Justice, dissenting. I dissent from the denial of the attorney fee. The sanction applied in this case far exceeds the impropriety. No consideration is given to the public service performed by this attorney in stopping the illegal exaction.

JOHN I. PURTLE, Justice, dissenting in part, concurring in part. The majority opinion sets out sufficient facts for a clear understanding of this case with the exception of that portion of the record relating to the relationship of the appellees' attorney and the appellant in this case. I feel the majority should have quoted that part of the record where the attorney for the appellees in the present case offered to give the *Phillips* v. *Weeks* file back to the city attorney because he feared it might become the subject of a motion to disqualify. Part of Mr. Henry's testimony was:

Mr. Magruder told us he didn't want the *Phillips* v. *Weeks* file back and that if we would keep it, it would never serve as a basis for any motion to disqualify.

It should be pointed out that all of the ordinances which the

appellant claims were enacted with the approval of attorney Henry were nothing more than the same ordinances being reenacted several times. Every year when the city decided to levy this illegal tax they upped the ante and required a larger payment by the Water Works Commission, which is a tool in the hands of the City Directors of the City of Little Rock, Arkansas. Also, it should be kept in mind that the ultimate parties responsible for the payment of this illegal tax were the customers of the City of Little Rock Water Works Commission.

The attorney for the appellant engaged in the private practice of law with the full knowledge and consent of the Board of Directors for the City of Little Rock. He later instituted a suit to force the city to refund monies they had illegally collected from the public. They contend it is unfair because he gained such knowledge while he was an assistant city attorney which now constitutes an adverse interest. Nonsense! The ordinances are public records and are actually published in the newspapers in order that the public might become aware of them.

I have no doubt that the present attorney for the appellant feels that he has misled attorney Henry because he has been forced by the board of directors to back down on his word that the *Phillips* v. *Weeks* case would never be used to disqualify him.

The truth of the matter is that it is none of the board's business as to whether David Henry receives $5 or $500,000 in this case. It is not coming from the pockets of the city. The city is only respnsible for the refund they have been ordered to make. Therefore, they have no standing to argue this point. The fee allowed by the chancellor is a part of the recovery made by the efforts of Mr. Henry and his associates. So far as I am concerned, attorney David Henry has acted with the utmost honesty and frankness in this entire matter. Certainly, it cannot be said of him that he backed down on his word. If those who recover the funds are satisfied with the amount of attorney's fee allowed, then it should be allowed. Certainly, the city attempted to defeat the rights of these same people from collecting anything whatsoever. Now it looks to me like a case of sour grapes.

I would reduce the attorney's fee in the same proportion that the amount of the recovery is reduced and allow him the 25% authorized by the trial court, provided his clients do not object.

### Dissenting Opinion on Denial of Rehearing
### delivered January 17, 1983

JOHN I. PURTLE, Justice, dissenting. I would grant the petition for rehearing in the matter of the appellant's attorney fee. The attorney had absolutely no conflict of interest. The City of Little Rock obviously broke its word of honor. The City further persuaded a majority of this court to deny the attorney any compensation whatsoever for his work, which action by the City smacks of pure spite and retaliation. If it were the intent of the majority to chill and discourage attorneys from undertaking class actions against a governmental unit then the opinion is eminently successful. We should right the wrong which we committed in the initial opinion. I would grant the rehearing.