The Honorable James C. Scott State Senator 321 State Highway 15 North Warren, Arkansas 71671
Dear Senator Scott:
This is in response to your request for an opinion on two questions relating to the income tax surcharge imposed by Act 916 of 1995 upon residents of those school districts that do not levy the "base millage," as defined therein. As discussed in your request, section 4 of Act 916 provides that revenues from the surcharge will be distributed to those school districts that failed to levy the base millage:
 in a fashion that, when combined with the revenues produced by the millage available for maintenance and operation actually levied by each local school district, provides the same amount of revenues as would have been provided by levying the base millage in such local school district.
Your questions are:
 1. If the revenues produced by the 10% surcharge on individual income taxes in districts which do not levy at least the base millage are not sufficient to fully subsidize the districts which failed to levy the base millage, from what source will the necessary additional maintenance and operation funds be provided for those districts?
 2. If a district fails to levy at least the base millage and the 10% surcharge is assessed on income taxpayers in the district and the surcharge is subsequently ruled unconstitutional by the courts, will the unconstitutional surcharge be rebated to taxpayers and if so, how will the loss in school maintenance and operation funds be made up?
With respect to your first question, neither Act 916 nor any other law specifies a source of funds from which to subsidize further a district failing to levy at least the base millage in the event revenues arising from the surcharge and distributed to the district are not sufficient to provide to the district an amount equal to the amount that would have been realized if the base millage had been levied.[1]
Section 3 of the Act creates the Public School Support Fund on the books of the State Treasurer, to which revenues arising from the surcharge are to be credited. Section 4 of the Act requires the State Treasurer monthly to certify the amounts having accrued in the Public School Support Fund and to transfer such amounts to the Public School Fund, from which the Department of Education is directed to distribute "those additional funds" to the districts and in the manner specified in the portion of section 4 quoted above. Nothing in Act 916 or other law specifies any source of funds to make up any shortfall in the Public School Support Fund or directs that any amounts in the Public School Fund, other than revenues from the surcharge, be transferred to the districts not levying the base millage in order to make up for a shortfall in revenues available under Act 916. No other provision of law provides for the deposit of any amounts to the Public School Support Fund. It is my opinion, therefore, that a school district receiving funds under Act 916 will not receive, under current law, funds from any source expressly for the purpose of making up the difference between its millage funding shortfall and the amount it receives as a result of the surcharge.[2]
With respect to your second question, it is impossible to predict with any certainty whether a court finding the surcharge unconstitutional[3]
would order revenues already collected thereunder to be rebated to taxpayers.
 The general rule is that funds which have been acquired through an illegal exaction are to be returned pro rata to the various taxpayers who initially paid them. . . .
Hasha v. City of Fayetteville, 311 Ark. 460, 471, 845 S.W.2d 500 (1993).
There are, however, exceptions to this general rule. One applies to cases where the identities of those who paid the taxes cannot be shown with any economic certainty. Id. As any payment of the surcharge will be accompanied by a return identifying the taxpayer, this exception should not be applicable here.
Another exception provides that taxes paid voluntarily before the commencement of suit are not refundable. In Mertz v. Pappas,320 Ark. 368, 370, 896 S.W.2d 593 (1995), the court explained:
 We have consistently followed the common law rule that prohibits the recovery of voluntarily paid taxes, except where a recovery is authorized by a statute without regard to whether the payment is voluntary or compulsory. See, e.g., City of Little Rock v. Cash, 277 Ark. 494, 644 S.W.2d 229 (1982); Searcy County v. Stephenson, 244 Ark. 54, 424 S.W.2d 369 (1968); Thompson v. Continental Southern Lines, Inc., 222 Ark. 108, 257 S.W.2d 375 (1953). We follow this rule even when an illegal exaction claim is based on constitutional grounds. Cash, 277 Ark. at 504-05, 644 S.W.2d at 233. When recovery is authorized by statute upon payment "under protest," we literally require a payment "under protest." Hercules, Inc. v. Pledger, 319 Ark. 702, [894] S.W.2d [526] (1995). There is an exception for payment under coercion, see Cash, 277 Ark. at 505, 644 S.W.2d at 233; Chapman Dewey Land Co. v. Board of Directors, 172 Ark. 414, 288 S.W. 910
(1926), but that exception is not applicable to the case at bar.
 The reasoning underlying our cases is sound. When taxes are paid to a government they are deposited into that government's general revenues and ordinarily are spent within that tax year. However, when the government is put on notice that it may be required to refund those taxes, it can make the appropriate allowance for a possible refund. See Hercules, Inc., 319 Ark. at 707, [894] S.W.2d at ___. If we were to allow refunds for taxes voluntarily paid in previous years, it would jeopardize current and future governmental operations because current and future funds might be necessary for the refund.
Obviously, the applicability of this exception, or the exception to the exception mentioned in the quoted passage, will depend upon the facts and circumstances presented in a suit in which the surcharge is declared unconstitutional.
Solely for the purpose of providing an answer to the second part of your second question, I will assume that a court will find Act 916 to be unconstitutional, that the court will order any revenues already collected under the surcharge to be refunded to taxpayers, and that those rulings will not be appealed or ultimately will be upheld on appeal. In such a case, it is my opinion, as stated and discussed at greater length in Op. Att'y Gen. 95-307, issued today (copy enclosed), that the difference between the amount of funds that would have been available to a school district had it levied the base millage and the amount available from the millage actually levied will be distributed to the district in accordance with, and from the sources specified in, Act 917 of 1995.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] Act 917 of 1995 contains a provision under which the same shortfall addressed by Act 916 (i.e., the difference between the amount that would have been realized if the base millage had been levied and the amount available from the millage actually imposed) would be made up from other state funds, primarily those commonly known as county and municipal "turnback" funds. It appears likely, however, that, to the extent Act 916 is valid, that provision of Act 917 was repealed by implication by Act 916. See Op. Att'y Gen. 95-307, issued today (copy attached). As a result, it appears unlikely that turnback funds will be available to supplement revenues arising from the surcharge.
[2] This is not to say that such a district will not receive funds that, in fact, make up all or part of this difference under provisions of law that do not relate directly to shortfalls in the available amount of revenues from the surcharge. Some districts may, for example, receive a "Debt Service Funding Supplement" under section 3(c) of Act 917 of 1995, or "additional state funding necessary to ensure that the Total State and Local Revenue per ADM of each Local School District is no less than the Minimum State and Local Revenue per ADM" under section 3(e) of Act 917. It is possible that funds received under these or other provisions not directly related to the surcharge may decrease or eliminate any shortfall in revenues available from the surcharge.
[3] See Op. Att'y Gen. 95-319, issued today (copy attached), which concludes that, while the substance of Act 916 is probably unobjectionable on constitutional grounds, the manner in which it was enacted could be challenged under Ark. Const. art. 5, § 21, although the issue can be determined definitively only by a court.