The Honorable Bill Bevis State Representative 1621 Bevis Road Lonoke, AR 72142
Dear Representative Bevis:
This is in response to your request for an opinion on the following questions concerning the repeal of Lonoke County Ordinance No. 5-1995, which established a drug task force under the direction of the Prosecuting Attorney, and Ordinance No. 6-1995, which authorized the collection of a voluntary tax:
 1. Does the repealing of the voluntary tax ordinance No. 6-1995 give the Tax Collector the authority to stop collecting the tax since the tax was actually levied on the Appropriation Ordinances that are passed each November that establishes the rates of taxation to be levied on taxable real and personal property in Lonoke County?
 2. Does the Quorum Court have the authority to repeal Ordinance No. 6-1995 or the appropriation ordinances once the collector has been charged with the collection of such taxes and has collected for a portion of the tax period?
 3. If the answer to question 2 is yes, what process must the collector follow for the remainder of the tax period as far as the tax books are concerned? Should the taxpayer include the voluntary tax with their tax payment after the tax is repealed, what refund procedure must the collector follow? (Example — the refund is 35 cents and the cost to the county is $1.00. Who bears the expense involved in the refund?)
 4. If the answer to question 2 is no, can any money, collected after the ordinance repealing the prosecuting attorney's drug task force is in effect, be appropriated to the county sheriff for the purpose of eradicating drugs in the county or establishing a drug task force under his jurisdiction?
 5. What is the disposition of any money remaining after all expenditures committed prior to the passing of the repealer ordinance dissolving the drug task force under the jurisdiction of the prosecuting attorney, have been paid? May the remaining money be appropriated to another county or state agency for the purpose of eradicating drugs in the county?
RESPONSE
Question 1 — Does the repealing of the voluntary tax ordinance No. 6-1995give the Tax Collector the authority to stop collecting the tax since thetax was actually levied on the Appropriation Ordinances that are passedeach November that establishes the rates of taxation to be levied ontaxable real and personal property in Lonoke County?
It is my opinion that the answer to this question is "no" with respect to taxes collected under the November, 1998, tax levy. In my opinion, the repeal of the voluntary ordinance did not affect the collection of these 1998 taxes.
The Quorum Court meets in November to levy the county, municipal, and school taxes. A.C.A. § 14-14-904(b). I assume that the reference in your question to the fact that "the tax was actually levied on the Appropriation Ordinances that are passed each November" refers to this November levy, and specifically the November, 1998, levy of taxes by the Lonoke County Quorum Court. The voluntary tax approved by Ordinance No. 6-1995 was presumably included in this levy.
Taxes were collected under this 1998 levy from February to October, 1999, in accordance with A.C.A. § 26-35-501(a)(1) (Repl. 1997), which provides that county ad valorem taxes ". . . shall be due and payable on and from the third Monday in February to and including October 10 in theyear succeeding the year in which the levy is made." (Emphasis added.) Thus, taxes are actually collected the year after they are levied. See
Op. Att'y Gen. 91-238. The collections in this instance included, as I understand it, the voluntary tax.
It is my opinion that the ordinance abolishing the voluntary tax in question, (Ordinance No. 10-1999, passed July, 1999), did not have the effect of stopping collections of the tax for the 1998 tax year. As noted, the tax was included in the November, 1998, levy of taxes. The collector proceeded properly in collecting the voluntary tax with the other 1998 taxes. Although the ordinance purports to abolish collection of the tax from the date of the ordinance's passage, I believe this must be read to apply to the collection of 1999 taxes. The November, 1998, tax levy remains in effect, as is required by law because the Quorum Court cannot meet after November to change the levy. See Op. Att'y Gen.91-144.
Question 2 — Does the Quorum Court have the authority to repeal OrdinanceNo. 6-1995 or the appropriation ordinances once the collector has beencharged with the collection of such taxes and has collected for a portionof the tax period?
See response to Question 1 above. The Quorum Court had the authority to repeal the voluntary tax. But in my opinion, the repeal did not affect the 1998 levy or collection of the 1998 taxes.
Question 3 — If the answer to question 2 is yes, what process must thecollector follow for the remainder of the tax period as far as the taxbooks are concerned? Should the taxpayer include the voluntary tax withtheir tax payment after the tax is repealed, what refund procedure mustthe collector follow? (Example — the refund is 35 cents and the cost tothe county is $1.00. Who bears the expense involved in the refund?)
It is my opinion, consistent with the above analysis, that the voluntary tax was properly included on the 1998 tax books. Thus, in my judgment, there is thus no refund issue with regard to the 1998 taxes. As to any future payments of the voluntary tax, following the repeal, it is my opinion that the taxpayer will not be entitled to a refund. This is in accordance with the common law "voluntariness" doctrine, which precludes the refund of taxes voluntarily paid. See City of Little Rock v. Cash,277 Ark. 494, 644 S.W.2d 229 (1982).
Question 4 — If the answer to question 2 is no, can any money, collectedafter the ordinance repealing the prosecuting attorney's drug task forceis in effect, be appropriated to the county sheriff for the purpose oferadicating drugs in the county or establishing a drug task force underhis jurisdiction?
Question 5 — What is the disposition of any money remaining after allexpenditures committed prior to the passing of the repealer ordinancedissolving the drug task force under the jurisdiction of the prosecutingattorney, have been paid? May the remaining money be appropriated toanother county or state agency for the purpose of eradicating drugs inthe county?
I will address Questions 4 and 5 together as they both involve the use of any voluntary tax revenues remaining after repeal of the ordinance establishing the drug task force.
It is my opinion that these questions may require the interpretation of "Voluntary Tax Ordinance # 6-1995," the ordinance which authorized the collection of the voluntary tax:
 . . . to fund a county wide drug task force and to reduce the use and sell [sic] of illegal controlled substances; and further support law enforcement in enforcing law involving controlled substances as defined by Arkansas Statute . . . and for the furtherance of governmental operations. . . .
The issue of the use of tax proceeds from a tax levied for a specific purpose is governed by Article 16, Section 11 of the Arkansas Constitution, which states:
 No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose.
It is thus a fundamental constitutional precept that funds arising from a tax levied for a particular purpose cannot be diverted to another. As stated in Page v. Alexander, 206 Ark. 479, S.W.2d 415 (1943):
 The law is, of course, that a levy made for the purpose of raising funds for an expressed purpose may not be used in raising money for a different purpose. . . . By the use of the phrase `arising from a tax levied for one purpose' it was evidently intended that, when the tax was collected, it automatically belonged to the purpose for which it was levied, and could not thereafter be diverted by the Legislature to another purpose.
206 Ark at 483-484 (emphasis original).
The language of the ordinance levying the tax in this instance (Ordinance 6-1195) will, I believe, be determinative of the issue regarding the proper use of the remaining proceeds. It is possible that this language states the purpose of the tax broadly enough to authorize an appropriation for a drug task force under the jurisdiction of the sheriff or another county agency. The repealed drug task force ordinance (Ordinance 5-1995) may, however, also come in to play in determining the intent of the tax ordinance language. A conclusive determination in this regard is not, however, within the scope of an opinion from this office. The construction of county ordinances necessarily involves the intent of the Quorum Court, a factor that this office is not well situated to address. This matter is appropriately within the province of the county's local counsel.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:eaw/cyh