The Honorable Jay Bradford State Representative Post Office Box 8367 Pine Bluff, AR 71611
Dear Representative Bradford:
I am writing in response to your request for an opinion on the following:
 Do rules or regulations of the Arkansas Department of Environmental Quality, or any other regulatory agency, prohibit Arkansas cities from burning dilapidated and unsafe houses which have been declared a public nuisance? If so, are there any exceptions? Is it allowable for a city to "raze and remove" a dilapidated house which has been declared a nuisance if it have been determined that it has no asbestos? Is demolition of buildings or houses authorized by A.C.A. [§] 14-56-203 considered "urban renewal" for purposes of ADEQ regulations? Must every public nuisance house a city votes to raze and remove be certified asbestos free?
RESPONSE
I am unable to determine from your request for an opinion whether the city in question wants to demolish a structure and subsequently burn the waste material generated or wants to demolish a standing structure by means of intentional burning. With respect to the former, in my opinion the Arkansas Air Pollution Control Code, Arkansas Department of Environmental Quality ("ADEQ") Regulation 18 ("APCC") prohibits the open burning of waste material generated by a demolition project absent a permit from ADEQ. With respect to the latter, in my opinion, as a preliminary issue, A.C.A. § 14-56-203 (Repl. 1998) does not authorize a city to demolish public nuisance buildings by means of intentional burning. In response to your first question, aside from the lack of authority for the intentional burning demolitions noted above, the APCC prohibits any open burning for demolition without a permit from ADEQ unless there is no other legal, practical, or safe means of disposal or to prevent or remove a fire hazard. Also, the Arkansas Asbestos Regulation ("AAR") limits the demolition, by burning or otherwise, of facilities, as defined under that regulation, when the facility contains asbestos. Furthermore, any applicable federal regulations must also be consulted regarding the disposal and handling of asbestos or asbestos-containing material. In response to your second question, the APCC provides for an exception to the prohibition on open burning for the prevention or elimination of a fire hazard or with a permit from ADEQ if there is no other safe, legal, or practical method of disposal. As for any exceptions to the AAR, it applies only to "facilities" as defined under that regulation. With respect to your third question regarding burning a house that is determined to lack any asbestos, I refer you to my response to question one and the prohibition on open burning found in the APCC. With respect to your fourth question, my research has not revealed any ADEQ regulations regarding "urban renewal." The applicable federal regulations may need to be consulted with respect to this provision. With respect to your fifth question, the AAR applies only to "facilities" as defined under its terms and any building that does not meet the definition of a facility under the AAR is not subject to its provisions. If, however, the building to be razed or removed is a "facility" under the AAR, the facility must be certified asbestos-free under the AAR prior to actual demolition. Applicable federal law may need to be consulted as well.
Question One: Do rules or regulations of the Arkansas Departmentof Environmental Quality, or any other regulatory agency,prohibit Arkansas cities from burning dilapidated and unsafehouses which have been declared a public nuisance?
As noted above, I am uncertain whether the city in question wants to burn materials resulting from a demolition operation or use intentional burning of a standing structure as a demolition method.
With respect to burning materials that result from a demolition project, it is my opinion that the APCC generally prohibits the open burning of such materials. APCC §§ 18.601. through § 18.605. Specifically, § 18.602 prohibits the opening burning of "trade waste, or other waste material." "Trade waste" is specifically defined in Chapter 2 of the APCC as "any solid, liquid, or gaseous material . . . from . . . any demolition operation . . . [.]" Id. at 2-4. Two exemptions could apply in certain, limited circumstances. First, there is an exemption where the open burn is set or authorized by a public official for "the prevention or elimination of a fire hazard." APCC § 18.603(G). Second, ADEQ may issue a permit to allow an open burn for "any material not elsewhere specifically prohibited or exempted in this chapter and for which there is no practical, safe, or lawful means of disposal." Id. at § 18.603(I). Whether a particular amount of waste material would be considered a fire hazard is a question of fact that this office is neither authorized nor equipped to determine.
If your question refers to the intentional burning of a standing structure, other than the burning of demolition materials, in my opinion, as an initial matter, A.C.A. §14-56-203 does not appear to authorize a city to demolish a nuisance building by intentional burning. Even if such authorization existed, the APCC nonetheless prohibits open burning for demolition purposes subject to exceptions discussed below. Any such intentional burning would also be required to comply with the AAR which prohibits the burning of "facilities" containing asbestos and would be subject to applicable federal regulations promulgated by the Environmental Protection Agency ("EPA").
Although it is somewhat unclear, your question may inquire about a municipality's authority to burn a dilapidated or unsafe house as a method of demolition. If this is indeed the focus of your inquiry, I must determine as an initial matter whether a city has the general authority and power to burn the buildings in question. I summarized the nature of municipal authority in Op. Att'y Gen. 2005-018 stating:
 Municipal corporations of the first class are "authorized to perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to [their] municipal affairs including, but not limited to, the power to tax." A.C.A. § 14-43-602 (Repl. 1998). Despite this grant of authority, it is clear that municipal corporations in Arkansas cannot pass any laws contrary to the general laws of the State. See
Arkansas Const. Art. 12, §§ 3 and 4; and Nahlen v. Woods, 255 Ark. 974, 504 S.W.2d 749 (1974). In addition, despite the seemingly broad grant of authority in A.C.A. § 14-43-602 (adopted in 1971), the Arkansas Supreme Court has continued to hold that a city possesses only those powers that are expressly granted by the Constitution or the General Assembly, necessarily incident to the execution of those granted powers, or powers that are indispensable, and not merely convenient, to their objects and purposes. Cosgrove v. City of West Memphis, 327 Ark. 324, 326, 938 S.W.2d 827 (1997); see also Op. Att'y Gen. 2004-046. In addition, substantial doubt as to the existence of a power in a municipal corporation must be resolved against it. Cosgrove, supra (citing City of Little Rock v. Cash, 277 Ark. 494, 501, 644 S.W.2d 229 (1982)).
Id.
The specific statute at issue, referenced in your fourth question, is A.C.A. § 14-56-203, which states:
 Cities of the first and second class shall have the power to order the removal or razing of, or to remove or raze, any buildings or houses that in the opinion of the council have become dilapidated, unsightly, unsafe, unsanitary, obnoxious, or detrimental to the public welfare and shall provide, by ordinance, the manner of removing and making these removals.
Id. To determine whether a city is expressly granted the power to burn a structure, the term "raze or remove" must be analyzed. "Raze" simply means "to tear down; demolish; level to the ground." Random House Webster's Unabridged Dictionary 1605 (2d Ed., Random House 1998). Remove, the broader of the two words is defined in pertinent part as "6. to take away, withdraw, or eliminate . . . 7. to get rid of; do away with; put an end to. . . ." Id. at 1630.
Neither of these terms necessary implies intentional burning. In my opinion, the plain and ordinary meaning of raze does not include an intentional burning. The definition of remove is notably broader. That definition, however, concerns getting rid of or doing away with, in this instance, a structure. It would seem to be a stretch of the proffered definition to include intentional burning within the aegis of "remove." In my opinion, the plain and ordinary language of A.C.A. § 14-56-203 does not appear to include authorization for the intentional burning of nuisance buildings.
In any event, as noted above, the APCC prohibits open burning as a method of demolition in most instances. APCC §§ 18.601. through § 18.605. Specifically, § 18.602 prohibits the opening burning of "trade waste, or other waste material." "Trade waste" is specifically defined in Chapter 2 of the APCC as "any solid, liquid, or gaseous material . . . from . . . any demolition operation . . . [.]" Id. at 2-4. The intentional burning of houses declared to be a nuisance would be a "demolition" and would therefore be prohibited under this regulation. Two exemptions to these regulations could apply in certain, limited circumstances. First, there is an exemption where the open burn is set or authorized by a public official for "the prevention or elimination of a fire hazard." APCC § 18.603(G). Second, ADEQ may issue a permit to allow an open burn for "any material not elsewhere specifically prohibited or exempted in this chapter and for which there is no practical, safe, or lawful means of disposal." Id. at § 18.603(I). Whether a particular building would be considered a fire hazard is a question of fact that this office is neither authorized nor equipped to determine.
In addition, it is apparent that there is a concern over potential asbestos pollution or contamination in the buildings proposed to be destroyed. The Arkansas Pollution Control 
Ecology Commission ("APCEC"), of ADEQ, has promulgated the AAR. One of the stated purposes of the AAR is to "establish standards for demolitions, renovations, and disposal" of material containing asbestos pursuant to 40 C.F.R. Part 61 and40 C.F.R. Part 763, subpart E. AAR § 2.3. The AAR covers "facilities" defined as:
 Any institutional, commercial, public, industrial, school, or residential structure, installation, or building (including any structure, installation, or building containing condominiums or individual dwelling units operated as a residential cooperative, but excluding residential buildings having four or fewer units); any ship; and any active or inactive waste disposal site. For purposes of this definition any building, structure, or installation that contains a loft used as a dwelling is not considered a residential structure, installation, or building. Any structure, installation, or building that was previously subject to this regulation is not excluded, regardless of its current use or function.
AAR § 4. "Installations" are defined as:
 Any building or structure or any group of buildings or structures at a single demolition or renovation site that are under the control of the same owner or operator (or owner or operator under common control).
Id.
The AAR provides that any facility, including installations but excluding residential buildings with four or fewer units, to be demolished or renovated must be inspected by qualified inspectors under the AAR for the presence of asbestos prior to such demolition or renovation. AAR § 5.1. It is the city's responsibility to perform the required inspection. If a city is to demolish or destroy a facility or installation as defined under the AAR, one of two notice requirements must be met. The general notice requirement states that notice must be delivered to the APCEC at least ten working days prior to beginning any demolition activity. AAR § 6.1. If asbestos is contained within the facility, the asbestos must be removed and disposed of in accordance with the requirements of the AAR. AAR § 6.6(H). Until such time as there is not a danger of asbestos pollution as defined in the AAR, the city may not move forward with a demolition or renovation project. Id. If a facility is "being demolished under order of a State or local government agency, issued because the facility is structurally unsound and in danger of imminent collapse," notice must be delivered to the Department no later then the first working day subsequent to the demolition. AAR § 6.2. The Department will review the notice sent for compliance with the AAR. AAR § 6.6 through § 6.7. Whether a particular building is "structurally unsound and in danger of imminent collapse" is a question of fact that this office is neither authorized nor equipped to determine.
The United States Environmental Protection Agency has extensive regulations regarding the handling, disposal, and use of asbestos; specifically, the sections of the Code of Federal Regulations referenced in the AAR noted above. Consultation with the city attorney and the APCEC is recommended prior to any proposed actions in this regard.
To summarize, in my opinion a city in all likelihood does not have the statutory authority to authorize the intentional burning of a standing house and, even if such authority were to exist, or if the city contemplates merely burning the demolition materials, the Arkansas Air Pollution Control Code prohibits such open burning in most circumstances and the AAR could prohibit such intentional burnings because of potential asbestos pollution.
Question Two: If so, are there any exceptions?
To reiterate, if your question refers to the burning of a standing structure, in my opinion there is no exception to the apparent lack of statutory authority to authorize the intentional burnings discussed above.
If the city wants to burn material resulting from a demolition project, as discussed above, the APCC prohibition contains two potentially applicable exemptions that are more fully discussed above.
With regard to the applicable regulations if the city wants to demolish a structure by means of intentional burning, the APCC prohibition on open burning provides two exemptions, more fully discussed above. The first is an exemption for openly burning at the direction of a public official to abate or prevent a fire hazard. APCC § 18.603(G). The second is by permit from ADEQ when there is no other safe, practical, and lawful method of disposal.Id. at § 18.603(I).
The AAR applies only to "facilities" as defined by the regulation. If the building to be demolished is not a "facility" under this regulation, then the provisions of the AAR do not apply. Also, the AAR provides for a separate standard to demolish a building that is declared an immediate public hazard because of a danger of collapse. AAR § 6.2.
Question Three: Is it allowable for a city to "raze and remove"a dilapidated house which has been declared a nuisance if it hasbeen determined that it has no asbestos?
The method of demolition will impact any potential demolition. If the demolition would create air pollution, the levels of such pollution and the method of demolition must comply with the APCC, discussed above.
In the process of razing or removing a "facility," as defined under the AAR, a city must comply with the AAR. In most cases, this requires an inspection and certification to APCEC prior to commencement of demolition procedures. AAR §§ 6.1 through 6.10. I refer you to the above discussion of the general standards of the AAR.
The city may wish to consult with the city attorney and the APCEC for further clarification and to determine the applicability of all Arkansas air pollution regulations and the federal regulatory schemes.
Question Four: Is demolition of buildings or houses authorizedby A.C.A. [§] 14-56-203 considered "urban renewal" for purposesof ADEQ regulations?
My research has not uncovered any references to "urban renewal" in the ADEQ regulations. The city should, however, consult the appropriate federal regulations promulgated by the EPA that impact such decisions.
Question Five: Must every public nuisance house a city votes toraze and remove be certified asbestos free?
Not necessarily. While a lack of asbestos would allow the city greater freedom in the removal of certain buildings, the inclusion of asbestos does not categorically prohibit the removal of the building. I reiterate that it is my opinion that A.C.A. §14-56-203 does not appear to grant a city the authority to demolish a building by intentional burning.
As noted above, the AAR requires that a "facility" be certified asbestos-free prior to demolition or renovation. As noted above, this requirement only applies to a "facility" as defined by the AAR. Additionally, the applicable federal regulations would still need to be consulted.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JMD/cyh